## P. P. Babin *v.* John Nolan.

An heir who sues for a share in the community existing between a deceased sister and her husband, cannot recover the value of what has been consumed in necessary daily use, nor for what was necessary for the continued improvement and cultivation of the plantation in which he was interested, and in the crops of which he shared.

APPEAL from the District Court of Point Coupée. *Farrar*, J. *W. B. Robertson*, for plaintiff. *George S. Lacey*, *J. L. Lobdell* and *S. P. Greves*, for defendant. The judgment of the court was pronounced by

Preston, J. This is the ninth time the controversies of these parties as to the succession of *Marie Babin*, the deceased wife of *John Nolan*, has been before the Supreme Court. She died in 1841, leaving her brother her sole heir; and her succession consisted of her interest as wife in community in a sugar estate, which her surviving husband administered. In looking back into the litigation of the parties, we do not see anything in the succession peculiarly intricate which ought to have prevented the administrator from settling it within the year, in which it is supposed by the law estates may ordinarily be settled, and for the settlement of which the law allows summary trials without the intervention of juries. Notwithstanding the ten years that have elapsed since the opening of the succession, this case comes up with a new record of near five hundred pages. Under such circumstances we will presume much in favor of the former judgments, and the prescriptions pleaded against the reciprocal demands of the parties. *Interest rei publicæ ut sit finis litium.*

The plaintiff, the only heir of the deceased, claims a large sum for half the difference in value of movable property, according to inventories made immediately after the decease of his sister, and in 1844, when made for a partition with her surviving husband, and also for the value of property not produced at the second inventory. Much of the personal property first inventoried was of daily use, and necessary for the continued improvement and cultivation of the plantation from which the plaintiff received his share of the crops, and has realized his share of the increased value of the property by improvement. The defendant is not liable for what was consumed for those purposes, nor for the deterioration by use of what remained. No extravagance in the consumption of the property is proved, or negligence in the use of what remained to be partaken. We think the claim is unfounded.

The plaintiff next claims damages on an injunction bond. The same damages were claimed by him in a former suit. The district court decided as follows : "It is considered that no damages whatever can be adjudged to the plaintiff in execution, which he prosecuted under pretext of a judgment which, contradictorily with him, or rather with his consent, has been annulled by proper authority. Finally, as there are no damages, there is nothing to carry costs." This claim is therefore barred by the exception *res judicata.*

The next claim of the plaintiff is for the half of two notes, one of *Thomas Clark* for $2000 and one of *Curtis* and *Holmes* for $3000, which he alleges belonged to the community of acquets. The note of *Clark* is dated after the dissolution of the community, and belongs to *John Nolan* individually. *Curtis* and *Holmes* were non-residents and insolvent; reasonable diligence has been used to realize the debt, but without effect.

He claimed, further, the half of a debt of the community, which he alleged he had paid to the *Citizens' Bank*, but offered no proof in support of the claim.

He claims, further, half of the value of two slaves, *Enoch* and *Charles*, belonging to the community, but which were not produced in the partition. The defendant has proved that *Charles* was accidently drowned before the partition. He must pay half the value of *Enoch*, of whom he gives no account by testimony. The district court fixed half his value at $450, and we cannot say his assessment is unreasonable.

The plaintiff claims the hire of the slaves allotted to him in the partition made in 1844. It was allowed to him from the 1st of February, 1842, until the 5th of May, 1847, when he obtained the slaves by a writ of possession, after constant litigation to obtain his interest in the community during the whole period. The prescription of three years, plead against this claim, is applicable to the conventional hire of slaves, and not to the fruits of property detained by an administrator from the heir, who keeps him constantly in default by suits for the property and a settlement.

We think the estimate made and allowed by the district court for the value of the services of the slaves or for their hire greater perhaps than the evidence would justify; but there are equitable circumstances favorable to the plaintiff in this case, which induce us not to scrutinize too closely the estimate of the hire made by the district court.

The defendant by reconvention claims half the debts of the community of acquets amounting to upwards of $40,000, which he alleges that he paid, and that the payments have never been allowed him in all the controversies between him and the plaintiff. It was his first duty, as administrator of the community of acquets, to have paid these debts in 1841 ; to have filed his accounts with the vouchers within a year after his appointment, and to have had them homologated ; and if his claims were not properly allowed, to have obtained redress by appeal.

Whether he paid the debts of which the half is claimed or not, and whether his claim for them has been allowed or not, we find by examining the record that the rejection of his claims for them has not only become the thing adjudged, but that their rejection has been twice adjudged against him. For when the controversies of these parties were the seventh time before the late Supreme Court, the defendant made an effort, as he does now, to have the case remanded for the purpose of having the present claims examined and allowed. After expressing their just surprise that the claims should be again presented, the Supreme Court examined with care the action of the inferior court in two suits in relation to them and the affirmance of the judgments in those suits; and after showing that they had been twice rejected in the lower court, and twice in the Supreme Court, conclude by saying : "A careful re-examination of the old records has satisfied us that all the money matters existing in controversy between the parties on the previous trials below and before this court, have been finally settled and adjudicated upon by the judgments subsequently affirmed; that the various sums shown to be due to the defendant by the community have been justly liquidated; that those judgments have now the force of *res judicata* between the parties upon all the subjects therein determined; and that they must have the same effect upon the account and vouchers, which the appellant having failed to produce and prove in due time, has sought in vain to introduce and investigate in the lower court. We conclude, therefore, that the appellant is now precluded from setting up the pretensions upon which he based his motion, which was overruled by the inferior court."

The defendant claims the slave *Giles*, or his value, allotted to the plaintiff in the partition, on the ground that the slave was his separate property. The partition was duly homologated by judgment on the 23d of June, 1845, which judgment was confirmed on appeal by the Supreme Court. The plea *res judicata*, therefore, bars the claim if it was valid. And to show how reasonable it is to presume much in favor of the settlements already made by judgment, we find what has not been brought to our notice by the counsel on either side, that although the defendant took much pains to show that the slave *Giles* was his separate property by the date of the bill of sale, yet on examining the old accounts homologated by judgment, that he was paid for out of the crops belonging to the community, and the price allowed to the defendant in accounting for those crops. The parties have litigated so long, that they seem to overlook in the end what was done in the beginning.

The defendant claims damages for the illegal sequestration by the plaintiff of the crop of 1842. None are proved; which renders it unnecessary to examine the plea of prescription and exception *res judicata* as to this claim.

The defendant next claims damages for the seizure of his property under an execution illegally issued in 1843, and which he successfully enjoined. He claimed damages for the illegal seizure in his suit for the injunction; and the court, in making it perpetual, rendered the following judgment on the claim for damages: "As to the damages claimed by *Nolan*, the court cannot see the propriety of granting any; said *Nolan* having suffered no injury." *Nolan* took no appeal, and this claim is therefore barred by judgment.

The only claim of the defendant set up in his demand in reconvention, which appears to be tenable, is for half the value of the standing crop sold with the community land in 1844, and purchased by him. It has been decided by the Supreme Court, that the crop of 1844 belonged to the defendant and no part of it to the plaintiff. Much and varying testimony was taken as to the value of that crop. The district judge had much better means of judging on the subject than we have, and we think has fixed a fair value upon it.

After examining the voluminous case with great care, as is manifest by his judgment, he established a balance in favor of the plaintiff against the defendant of fourteen thousand three hundred and eight dollars thirteen cents; for which he rendered judgment with legal interest from the judicial demand and costs. The interest cannot be allowed because not prayed for in the petition. C. P. art. 157,553. The claim was so unliquidated that perhaps damages were not allowable perhaps if claimed.

For the reasons given, it is reversed as to the interest at the costs of the appellee, and affirmed in all other respects.