(51 South. 584.)

No. 17,612.

Succession of KLEINERT.

(Jan. 17, 1910. Rehearing Denied Feb. 28, 1910.)

*(Syllabus by Editorial Staff.)*

HUSBAND AND WIFE (§ 274*) — COMMUNITY PROPERTY—RIGHTS OF HEIRS.

Decedent was twice married. He had two children by his first wife, but none by his second, who was a widow with children. After his second marriage, he and his children made a settlement, by which he kept all the property of the first community, consisting of $625 in cash, $2,522 in merchandise, and $6,500 in real estate. In arriving at the sum due his children, $2,000, before received by them from him and his wife as an advance of their share in the succession of their mother, was fictitiously added to the above, and for one-half of the total amount, less the $2,000 already received, reducing their interest to $3,823.50, he gave them his notes, which were paid by the second community, which, so far as appears, absorbed and used for its benefit the cash and merchandise belonging to the first community. *Held,* that his children were entitled as heirs to claim as his separate property half the value of the cash and merchandise belonging to the first community, which went into the second, and $1,000, or half the $2,000 advanced to them, claim for which he relinquished in part payment for the property acquired from them for the second community.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1026–1031; Dec. Dig. § 274.*]

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

In the matter of the succession of George Kleinert. From a judgment determining a contest over the partition of the property between Bertha They and another, children of decedent by his first wife, and Lillie Sieger and another, children of his deceased second wife by a former husband, the first-named contestants appeal. Modified and affirmed.

Dart, Kernan & Dart, for appellants. W. S. Parkerson, for appellees.

PROVOSTY, J. George Kleinert was twice married. He had two children by his first marriage, but none by the second. His second wife, Mrs. Mary Herber, was a widow with two children. The community of acquêts and gains existed in both marriages. He and his second wife are dead, and the present litigation is over the extent of his interest in the second community. It has come up as an incident to the partition of the property of the second community; the contest being between his said two children and heirs, Mrs. Bertha They and Mrs. Amelia Braun, and the two children and heirs of his second wife. At the death of his first wife, Kleinert and his children made a settlement by which he kept all the property of the first community, consisting of the following:

Cash in bank.................... $   625 00
Stock of merchandise............   2,522 00
Real estate.....................   6,500 00

The settlement included also a matter of $2,000 which had been advanced by him and his deceased wife to their said two children "as an advance of their share in the succession of the one who would die first."

In making the settlement, this $2,000 was fictitiously added to the existing property, making a total of $11,647. The share of the two children was one-half of this, or $5,823.-50. Of this they had already received the said $2,000. So that their interest was reduced to $3,823.50. For the latter amount Kleinert gave his two notes to his two children.

This settlement was made five days after his second marriage, so that, by operation of

law, the half of said property which he thus acquired from his two children fell into the second community, and in like manner the notes he gave in part payment of the price became a debt of the second community.

He had been keeping a furniture store, and continued to do so for 10 or 15 years after his second marriage. The $2,522 stock of merchandise in question was the stock in this store. The evidence does not show what became of this stock of merchandise, except, perhaps, that it was gradually sold out; nor whether the business prospered or not; nor what became of the $625 received from the first community. The real estate still remains, and has become very valuable. The second community lasted 27 years, until the death of the second wife, which preceded Kleinert's by a few months. During its existence the notes given for the balance of the purchase price of the interest of Kleinert's two children in the first community were paid. They were paid by the second community.

There is, of course, no dispute as to Kleinert having been owner of three-fourths of the real estate at his death. But his said two children and heirs claim that he was, in addition, the creditor of the second community for his half of the $625 and of the $2,522 stock of merchandise, which had belonged to the first community, because these values were his separate property and went into the second community, and also for his half of the $2,000, which he and his first wife had advanced to their two children, because this $1,000 went towards paying the purchase price of the half of the property of the first community which was acquired by the second community.

It is very clear that the half of the said $2,000 did go into the second community. By the settlement of the first community which Kleinert made with his two children, he purchased or acquired for the second community his children's interest in the existing property of the community, consisting of:

Cash .......................... $ 625 00
Stock of merchandise............. 2,522 00
Real estate..................... 6,500 00
                                _____
                                $9,647 00

In part payment he gave the claim which he had against his children for $1,000, which was a perfectly good claim, since that amount had to be deducted from the children's share of the community property before they could take anything. The situation was as if he had taken $1,000 in cash out of his pocket and paid it to his children for the second community in part payment of the said property thus acquired for the second community. This $1,000, not having ever been reimbursed by the second community, is still due by it, and, of course, is the separate property of Kleinert; he having had it at the time of his second marriage.

As already stated, nothing shows what became of the $625 cash and of the $2,522 stock of merchandise, or of the proceeds of the sale of the latter. But it is not shown, or even suggested, that the same was wasted, or misapplied, or lost, or was in any way, shape, or form applied to any separate use of Kleinert. The merchandise was a stock of goods out of which sales were being made constantly, and therefore was probably all sold, and the price used in replenishing the same stock for the community. The $625 was probably used for some purpose or other of the community. The inference is irresistible that these values were absorbed in the second community. The second community, therefore, owes the heirs of Kleinert his half thereof, which was his separate property at the time of the second marriage.

This case is not analogous to that of Babin v. Nolan, 6 La. Ann. 295, where, as we understand, the inventoried value of implements upon a plantation, which in the course

of time had disappeared as the result of regular use in the service of the plantation, was sought to be recovered, but rather to that of Succession of Kidd, 51 La. Ann. 1169, 26 South. 74, where the separate funds of the husband were held to have been "reasonably ascertained to have been utilized for the benefit" of the community. The reasoning of the latter case is applicable to the facts of the present case, and need not be repeated here. See, also, Succession of Cormier, 52 La. Ann. 881–883, 27 South. 293.

The children of Kleinert inherited twice— once from their mother, and a second time, more than 27 years later, from their father. The fact that as heirs of their mother they became creditors of the second community, as the result of their having sold to this second community their interest in the first community, has absolutely nothing to do with the rights which they are now asserting as heirs of their father. The circumstance that the notes for $3,823.50 were executed in their favor and paid to them can exert no greater influence upon the settlement of the second community than if these notes had been executed in favor of, and paid to, some stranger. And so with the payment of the $1,000 to them. Their father paid them this $1,000, or, to be more specific, relinquished his claim against them for that amount, in part payment of the property which he acquired from them for the second community. They sold their interest in the first community to the second community for $4,823.50. One thousand dollars of this their father paid cash, by relinquishing his good claim against them for that amount. For the balance he gave his notes for $3,823.50; and these notes became a debt of the second community and were paid by the second community. For the $1,000 which he thus paid to them for the second community their father became the creditor of the second community; and at the death of their father

they inherited from him this claim of his against the second community.

In like manner they inherited from their father at his death his claim against the second community for his half of the $625 cash and $2,522 stock of merchandise, which was his separate property and had become absorbed in the property of the second community.

The judgment appealed from is therefore affirmed, except in so far as it rejects the claim of Mrs. Bertha They and Mrs. Amelia Braun to be recognized as creditors of the community of acquêts and gains which existed between their father and his second wife, Mrs. Mary Herber Kleinert, for $2,573.50, being their father's half of the property of the community that existed between him and his first wife, less the real estate; and it is ordered, adjudged, and decreed that the said claimants be and hereby are recognized as the creditors of the said second community for said amount.

The costs of this appeal to be paid by appellees.