(57 South. 316.)

No. 18,828.

DILLON et al. v. FREVILLE et al.

(Jan. 15, 1912.)

*(Syllabus by the Court.)*

1. HUSBAND AND WIFE (§ 257*)—SALE OF HUSBAND'S SEPARATE PROPERTY—LIABILITY OF COMMUNITY.

    In order to sustain a demand that the community be held liable for the proceeds of the sales of the separate property of the husband, received and disposed of by him during the existence of the community, it must be proved that such proceeds were expended for the benefit of the community.

    [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 910; Dec. Dig. § 257.*]

2. HUSBAND AND WIFE (§ 255*)—EXCHANGE OF PROPERTY—LIABILITY OF COMMUNITY.

    One of the principal effects of an exchange is that the thing received is subrogated, in full right, to that which is alienated. Hence when the husband exchanges his separate immovable property for other like property, the property received by him acquires the status of that alienated. Nor does it affect the question that he may give money "to boot," where the main consideration, moving from him, is the real estate; though, in such case, in the absence of proof that the money was his separate property, he and his estate become indebted to the community for the amount.

    [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 900–902; Dec. Dig. § 255.*]

3. SETTLEMENT WITH TUTRIX.

    Where, in the inventory of the husband's succession and in the subsequent adjudication of the community property to the widow, the property is undervalued, the proper value will be attributed to it upon a settlement between the widow, as tutrix, and the heirs, issue of the marriage.

    [Ed. Note.—For other cases, see Guardian and Ward, Dec. Dig. § 145.*]

4. HUSBAND AND WIFE (§ 258*)—COMMUNITY ESTATE—IMPROVEMENT.

    Improvements placed by the community upon the property of one of the spouses belong to the owner of the soil, who, or whose estate, becomes liable to the community to the extent of the enhanced value of the property, resulting from such improvements, at the date of the dissolution of the community.

    [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 909; Dec. Dig. § 258.*]

Appeal from Eighteenth Judicial District Court, Parish of Acadia; William Campbell, Judge.

Action by Ella Nason Dillon and others against Jessie B. Freville and others. From the judgment, plaintiffs appeal. Affirmed in part, and reversed in part.

Medlenka & Bruner, for appellants. Smith & Carmouche, for appellees.

MONROE, J. Plaintiff is a daughter of defendant by the latter's first marriage to Samuel Nason, and she brings this suit against her mother, individually and as tutrix of plaintiff's minor sisters, Edna and Irma Nason, for a partition of certain property (some of which is conceded to have been the separate property of Samuel Nason, and concerning other of which there is dispute), and for other purposes. She alleges that, in an account of tutorship (filed in court on November 19, 1908), her mother failed to charge the community with the proceeds, or parts of the proceeds, of certain lots or tracts of land which were acquired by petitioner's father, before marriage, and sold by him, after marriage, and which proceeds, amounting to $1,150 she alleges, inured to the community. She further alleges that defendant erroneously inventoried in the succession of Samuel Nason, as community property lot 2 and the south 100 feet of lot 9, in the town of Crowley, which was the separate property of the decedent, and that said property was fraudulently undervalued; that since November 5, 1908, defendant has been collecting revenues from the separate property of said decedent, and is indebted to petitioner for her proportion thereof; and she prays for judgment accordingly. Defendant admits that the property held in indivision is not susceptible of division in kind and makes no objection to a partition thereof by licitation. She alleges that said property consists of bare lots in the improvements upon which plaintiff has no interest, and that her interest in the revenue derived from said property would not exceed $20; but that, should the court hold otherwise, plaintiff should be condemned for her proportion of the cost of maintenance and of the taxes.

Plaintiff thereafter filed a plea of estoppel alleging that defendant, in opening the succession, and in her account of tutorship, charged the estate of Samuel Nason, and credited the community with the value of said improvements and cannot now be heard to assert title to them.

Samuel Nason, a widower with three children, and defendant were married July 1, 1890, and it appears that he then owned the following pieces of property, to wit:

(1) Lot 15, in block 50, measuring 50x100 feet, in the town of Crowley, for which he paid $150 cash February 11, 1888. (2) Ten acres of land, north of Crowley for which he paid $50 cash February 11, 1888, and gave two notes for $50 each payable in one and two years. (3) Lot 10, in block 50, in the town of Crowley, for which he paid $100 cash February 11, 1888. (4) Lot 3, in block 149, in the town of Crowley, for which he paid $15 cash February 20, 1888. (5) Twelve acres of woodland, northwest of Crowley, for which he paid $75 cash February 29, 1888.

April 7, 1891, Nason exchanged the "northern third of lot 10, in block No. 50" for the "southern two-thirds of lot 9 in block No. 50," and "lot No. 2 in the same block," and he paid $55 "to boot."

June 18, 1891, he sold the "12 acres" for $120 cash.

September 24, 1891, he sold the "lot 3 in block 149" for $50 cash.

August 22, 1893, he sold the "10 acres, north of Crowley" for $500 in notes of $100 each, payable in from one to five years.

January 31, 1899, he sold to Wm. F. Campbell, "23 feet of ground taken off the north side of lot No. 15, in block No. 50," for $1,800, of which $600 were paid in cash, and, for the balance, the purchaser gave his two notes for $600 each, payable in one and two years.

April 22, 1899, he died; and on November 21, 1899, his widow filed an inventory upon

which there appears, as the separate property of the decedent:

1. The southern portion of lot 15 in block 50, appraised at......... $1,250 00
2. The two promissory notes received in part payment of the price of the 23 feet, off the north side of said lot 15................... 1,200 00
3. "The southern two-thirds portion of lot 10, in block No. 50 * * * together with the buildings and improvements thereon, which were placed there, during the marriage by the husband, and which were paid for with community funds, and which enhanced the value of said community property as hereinafter set forth".................. 375 00
4. The claim of the separate estate against the community for the value, on April 7, 1891, of the northern one-third of lot No. 10, in block 50, "without any of the buildings, improvements, trees, etc., on said lot"............... 40 00

Total valuation of separate property .................$2,865 00

"From the above" (the procès verbal proceeds) "must be deducted the charges in favor of the community against the separate estate of the deceased, S. Nason, for the buildings and improvements placed by the deceased on his separate property during marriage, and paid for with community funds as aforesaid—the said charges and recompense due to the community being the enhanced value resulting to the separate property of the estate at the date of the dissolution of the community, on April 22, 1899, as follows:

(a) From the buildings and improvements heretofore described under item 1...................$500 00
(b) From the buildings and improvements on the property sold to Campbell, as described above, under item 2, due allowance being made for the fact that the one-third of the purchase price of said property had been paid previous to the dissolution of the community. This charge is. made only to the extent of two-thirds of the enhanced value of said property by reason of the said buildings and improvements, and the said two-thirds is 240 00
(c) From the buildings and improvements on the property herein before described under the item 3...................... 75 00

Total enhanced value...........$815 00"

Under the title "Community Property" we find the following items in the inventory, to wit:

"Lots 1 and 2 in block 50 * * * and the southern two-thirds portion of lot 9 of said block * * * appraised at $1,040, from which, however, are deducted $40, as stated above (4) leaving the net appraisement $1,000.

"(2) Recompense due the community by the separate estate of S. Nason for the enhanced value, at the time of his death, of his separate property, by reason of the buildings and improvements thereon, paid for with community funds, as herein before fully set forth, $815.-00."

Then follow items of cash, merchandise, household effects, open accounts, etc., making the total appraisement of the community property, $3,362.50.

The procès verbal then recites that Samuel Nason had been married twice and had left three children by his first marriage, and a widow and three children by his second marriage; that he had also left a will whereby he bequeathed his entire estate to his widow and the three children of his marriage with her, in the proportions of one-fourth to each; that the children of the first marriage had contested the will, and that the widow had bought their interests in the estate; and that the property was therefore owned by her and her three children in the proportion of $10/24$ of the separate property, and $17/24$ of the community to the widow, and $14/24$ of the separate property and $7/24$ of the community to the children, from which it follows that plaintiff owns $14/72$ or $7/36$ of the separate property and $7/72$ of the community property—the proportion which she is claiming.

By judgment of date February 15, 1901, rendered on the advice of a family meeting, the community property as per the inventory, was adjudicated to the widow, at the valuation therein given, to wit, $3,362.50.

On November 19, 1908, the widow, who had, in the meanwhile, married her present husband, with him to authorize her and as

cotutor, filed an account of her tutorship of the plaintiff herein, in which plaintiff is charged with her board and tuition, etc., from the date of her father's death; with her proportion of the cost of the maintenance of, and taxes on, the separate property of her father, and with interest upon the disbursements therefor; as also with the fees of the attorney for preparing and filing the account; making a total, on the debit side, of $1,965.08. And she is credited with:

Her share of community property, adjudicated to surviving widow......$ 326 85
5 per cent. interest thereon, from Feb. 25, 1901, the date of adjudication to Nov. 5, 1908............... 126 63
Her proportion of $4,482—being rent of whole property for nine years.. 871 50

Total .......................$1,324 99

Recapitulation.

Due by minor to cotutors...........$1,965 08
Due to minor by cotutors........... 1,324 99

Balance due to cotutors............$ 640 09

(The question is not raised, either in the pleadings or the argument, and we therefore allow the fact that the tutrix and cotutor appear to have expended the entire patrimony of the minor and to have brought her in debt, without authority, speaks for itself.) Several witnesses, called by plaintiff, testified that lots 1 and 2, and the southern two-thirds of lot 9 in block 50, were worth in 1899 (with the then improvements), say, $2,400, or $800 each. There is also some testimony to which we will refer later, concerning the rents collected, and the expenses defrayed by defendant, from and on account of the property.

Upon the case as presented, the judge a quo gave judgment, ordering the partition of the south two-thirds of lot 10, and the south 27 feet of lot 15, in block 50, and holding that the buildings thereon "are community property in which the plaintiff has no interest"; rejecting plaintiff's demands as predicated upon the allegation that the communi-

ty property has been undervalued and that lot 2 and the south two-thirds of lot 9, in block 50, should have been inventoried as the separate property of Samuel Nason; and disposing of the demand for rents of the separate property, as follows:

"It is further decreed that the $251.22 for rent, from November 5, 1908, to March 5, 1910, is rejected, for the reason that the separate property consisted of unimproved lots, the buildings and improvements thereon being and belonging to defendant in which plaintiff has no interest, and that a fair rent for the same would be, for said share of plaintiff, the sum of $20, which said amount was duly tendered in court. It is further decreed that defendant herein pay and account to plaintiff herein, from June 5, 1910, for rent of the Crowley furniture store at a rental of $35 per month, and for rent of the cigar stand at a rental of $6 per month, making a monthly rental of $41 per month, and, of the said amount of $41, that plaintiff receive her share, which is $7/_{36}$ thereof for each month. As to other claims of the plaintiff, they are rejected. It is further decreed that plaintiff pay her share of the taxes and costs of repairs made upon the property aforesaid. It is further decreed that defendant pay all costs, except as to the partition, which are to be paid proportionately."

### Opinion.

1. There is no evidence in the record as to the disposition that Samuel Nason made of the proceeds of his separate property, sold after his marriage to defendant. The sales were made in 1891, 1893, and January, 1899, respectively, and he died in April, 1899, leaving $151 cash on hand, to which were added $381.25 collected by the widow from notes and open accounts, referred to in the inventory as belonging to the community.

[1] The case, as to the demand that the community be held liable for the amounts so received is not distinguishable from others in which it has been held that, in order to sustain such demand, it must be proved that the amounts were expended for the benefit of the community. Stewart v. Pickard & Others, 10 Rob. 18; Depas v. Riez, 2 La. Ann. 44; Succession of Viaud, 11 La. Ann. 297; Belair v. Dominguez, 26 La. Ann. 605; Succession of Bollinger, 30 La. Ann. 193;

Succession of Foreman, 38 La. Ann. 700; Succession of Breaux, 38 La. Ann. 728; Succession of Rhodes, 39 La. Ann. 473, 2 South. 36; Heirs of Gee v. Thompson & Burns, 41 La. Ann. 348, 6 South. 548; Succession of Lyons, 50 La. Ann. 53, 23 South. 117.

In the cases of Suc. of Kidd, 51 La. Ann. 1160, 26 South. 74; Suc. of Cormier, 52 La. Ann. 881, 27 South. 293; Suc. of Kleinert, 125 La. 549, 51 South. 584, relied on by plaintiff, it was held, merely, that where the evidence is sufficient to justify the conclusion that the separate funds of the husband have been used for the benefit of the community, his separate estate should be credited for the amount of such funds.

2. There is no doubt that, for lot 2 and the southern two-thirds of lot 9 in block 50, Nason, after his marriage, gave in exchange the northern one-third of lot 10, in the same block, which was his separate property, and that he also gave $55 "in order to equalize the value of his property * * * exchanged." The transaction may, however, be none the less an exchange although a balance was paid in money. C. C. 2666. The evidence shows that, for the whole of lot 10, Nason in 1888 paid $100, and that for the whole of lots 2 and 9 Carver & Frankel (with whom the exchange was made) in February, 1891, paid $150. It may therefore be assumed that, when, in April following, lot 2 and two-thirds of lot 9 were conveyed to Nason, the property so conveyed was worth $125; and we also assume that the one-third of lot 10, conveyed by Nason in exchange was at that time worth $125, less the $55 given to equalize the values or $70; so that the major part of the value given by Nason consisted of his separate real estate.

In Newson v. Adams, 3 La. 231, it was held that:

"Where paraphernal property of the wife is given in exchange, that received in place of it partakes of the same character" (syllabus); Mr. Justice Matthews saying in the opinion: "Po-

thier, Contracts of Sale, part. 7, No. 9, states it to be one of the principal effects of an exchange that the thing is subrogated in full right to that which was alienated; subrogatum capit naturam subrogati."

In Lawson v. Ripley, 17 La. 238, it was held (quoting from the syllabus):

"When the title to property brought in marriage was in the party, although not paid for, it became his separate property, and remained such at the dissolution of the community. Slaves received during marriage by one of the spouses in exchange or in payment of money due him on his separate and individual right do not become community property."

In Percy v. Percy, 9 La. Ann. 184, it was held that a slave received in Mississippi by a wife (who afterwards with her husband removed to this state) in exchange for one owned by her at the time of her marriage became her paraphernal property.

In Troxler et al. v. Colley, Sheriff, et al., 33 La. Ann. 428, it was held (quoting the syllabus):

"Property acquired by an heir at a partition sale, and paid for by means of his heritable share, is his separate property, and does not fall into the community of acquêts and gains, as property acquired during marriage."

In the course of the opinion in the case thus cited, it was said:

"In substance, this general interest in all the property of the succession, the heir may be said to exchange, by the effect of these proceedings, for the specific thing he receives as the result of them. * * * If it be an exchange, there can be no question that property received in exchange for separate property, whether of a husband or wife, is of the same identical character as that given for it. [Newson v. Adams] 3 La. 233; [Percy v. Percy] 9 La. Ann. 185."

We therefore conclude that the lot 2 and the southern two-thirds of lot 9, acquired by Nason, in the exchange, became his separate property, and that his separate estate is the debtor of the community for the difference, of $55, paid, during the existence of the community, in order to equalize the values.

3. Lots 1 and 2, and the southern two-thirds of lot 9, inventoried as community property, were appraised together at $1,040,

from which $40 was deducted, leaving the appraisement at $1,000. There are two witnesses who testify that the property was worth $2,400 and $2,500, respectively.

We should, however, be disposed to accept the appraisement as made by the officers of the court, were it not that the record contains conclusive evidence that their appraisements were too low. Thus, on January 31, 1899, Nason sold a lot measuring 23x100 feet off the north side of lot 15, and as lot 15 measured 50x100 feet, there was left, by the side of the lot that was sold, a lot measuring 27x100 feet, which a few months later, was appraised in the inventory at $1,250. We are therefore of opinion that lot 1, in block 50 (which is the only one of the three in the valuation of which the plaintiff, in view of the conclusion heretofore reached, is interested), should be held to have been worth, with such improvements as were on it, $800, though we are satisfied that the original appraisement was made with no fraudulent purpose.

4. In the inventory filed by her, defendant attributes the ownership of the improvements, placed by the community on the separate property of her deceased husband, to his separate estate, and makes a charge, in favor of the community and against that estate, for the enhanced value of the latter, resulting from such improvements, which was the proper view to take of the matter.

"It is settled that the recompense due by the separate estate of the wife for improvements placed thereon, during marriage, at the expense of the community, is the enhanced value resulting to her separate estate, from the improvements, at the date of the dissolution of the community." Succession of Roth, 33 La. Ann. 540 (syllabus).

[4] "Improvements erected during marriage on the separate property of one of the spouses, even though made with community funds, belong to the owner of the soil, subject only, to the duty of paying to the community, at its dissolution, the enhanced value of the property, resulting therefrom." Dillon v. Dillon, 35 La. Ann. 92 (syllabus).

"The separate estate cannot be charged with the cost of improvements, but only with the enhanced value of the property. C. C. art. 2408; [Depas v. Riez] 2 La. Ann. 43; [Succession of McClelland] 14 La. Ann. 763; [Succession of Roth] 33 La. Ann. 540."

Succession of Boyer, 36 La. Ann. 509. See, also, Sims, Tutrix, v. Billington, 50 La. Ann. 968, 24 South. 637.

It is evident, therefore, that plaintiff is entitled to receive her proportionate share of the revenue derived from the property belonging to her father's estate whether improved at the expense of the community or otherwise, subject to the obligation of the estate with respect to the reimbursement of the community as stated in the above quoted cases.

5. It is conceded that, from the furniture store, on lot 15, and from a tenant, Pete, on lot 10 (which lots are admitted to belong to the separate estate of Samuel Nason) defendant collected rents from November 5, 1908—from the furniture store, at the rate of $35 a month, up to May 1, 1910, less two months when the building was vacant, and thereafter, at the rate of $40 per month, up to the time of the trial, say, June 5, 1910; and, from Pete at the rate of $6 a month from November 5, 1908, to the time of the trial; and plaintiff is entitled to recover $7/36$ of the amount so collected, with reservation of her rights with respect to other amounts which have since been collected from said property, or from the lot 2 and the southern two-thirds of lot 9, in block 50, subject to her obligation to contribute in like proportion, to the reimbursement of the amount expended in maintaining and paying taxes on said property.

6. The evidence in regard to the disbursements made by defendant on account of the property in question is not as full as it might be, but as plaintiff (through her counsel) admits the payment of certain bills there is no good reason why as to them there should not be judgment, at this time, and as to other similar claims, including taxes, we think the matter should be left open for fur-

ther proof on the consummation of the partition. The bills admitted are as follows: Thomas, $8.35; Gilbert, $1.50; Marx, $144.-75; Thomas, $17.37; Thompson, $22.50; Fontenot, $7.35—total, $207.07.

It is therefore ordered, adjudged, and decreed that, in so far as the judgment appealed from directs the partition, by licitation, of the southern two-thirds of lot 10 and the southern 27 feet of lot 15, in block 50, of the city of Crowley, and in so far as it rejects plaintiff's demand that the community lately existing between Samuel Nason and defendant shall further account for moneys received by said Nason from sales, during the existence of said community, of his separate property, and in so far as it condemns the defendant, Mrs. Jessie B. Freville, with respect to the costs of this litigation, said judgment be affirmed. It is further adjudged that, in all other respects, said judgment be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff decreeing lot 2 and the southern two-thirds of lot 9 in block 50, in the city of Crowley, to have been the separate property of her late father, Samuel Nason, together with all the improvements thereon, as also all the improvements on the southern two-thirds of lot 10, and the southern 27 feet of lot 15, of said block 50, in the city of Crowley; decreeing all of said lots or parts of lots, and improvements, to be now owned by defendant, Mrs. Jessie B. Freville, and her three children, Ella, plaintiff herein, and Edna and Irma minors, in the proportions of $10/24$ to said Mrs. Freville and $7/36$ to each of said children; decreeing that the whole of said property be sold in the manner provided by law, in order to effect a partition; and that the parties be referred to the proper officer, to be designated by the district court, for the consummation of the same. It is further adjudged that the valuation of lot 1, of block 50, in the city of Crowley, as appearing upon the inventory in the succession of Samuel Nason and in the adjudication of the community property to the surviving widow, defendant herein, be increased to $800, and that said defendant account to plaintiff for her interest in said lot upon that basis. It is further adjudged that, in the consummation of said partition, said defendant account to plaintiff for $118.38, being $7/36$ of $608.84, which amount is held to be the total of the rents collected by said defendant from the portions of said lots 10 and 15 in block 50, heretofore mentioned, between November 5, 1908, and June 5, 1910. It is further adjudged that in said partition plaintiff account to defendant for $40.23, being $7/36$ of $207.07, which amount defendant is found to have disbursed in maintaining and paying taxes on the property in question. It is further adjudged that the right of plaintiff be reserved to demand and recover in said partition such further amounts as may be due her on account of rents collected by defendant, and that the right be reserved to said defendant, similarly, to demand and recover, such further amounts as may be due her on account of disbursements made by her for the maintenance of, or in paying taxes on, the property in question; or by reason of the enhanced value of said property, resulting from improvements placed thereon at the expense of the formerly existing community between her and the late Samuel Nason; or by reason of the expenditure of community funds as "boot," in the exchange of the separate property of said Samuel Nason for other property acquiring the same status. It is further adjudged that defendant Mrs. Jessie B. Freville pay the costs of this appeal.