H. C. WALKER, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. H. C. WALKER, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELIAS GOLDSTEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. ELIAS GOLDSTEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8266, 8267, 8268, 8269.    Promulgated April 29, 1927.

1. A donation by a husband to his wife of his interest in an oil and gas lease which was community property under the laws of Louisiana, vests in the wife the husband's then interest in the lease as her separate property and gain resulting from a subsequent sale by the wife should be taxed as her gain.

2. The right of the husband under the laws of Louisiana to revoke a donation to his wife is a mere power and until exercised the title to the property donated remains in the wife.

3. Where the owners of an interest in an oil and gas lease sold and transferred their interest for a certain sum of money they are not entitled to a depletion allowance against any gain resulting from the sale, even though the consideration for the sale was payable solely out of royalties.

*Elias Goldstein, Esq.,* for the petitioners.
*Robert A. Littleton, Esq.,* for the respondent.

By agreement these proceedings were consolidated. They involve deficiencies in income taxes for the years 1920 and 1922. In the case of H. C. Walker, Jr., the total deficiency for the two years amounts to $46,104.83, of which the petitioner concedes that $21,900 is due, leaving in controversy, $24,204.83. In the case of Mrs. H. C. Walker, Jr., the total amount of the deficiencies is $48,137.65, of which the petitioner concedes that approximately $23,900 is due, leaving in controversy approximately $24,237.65. In the case of Elias Goldstein, the total amount of the deficiencies for the two years amounts to $39,044.27, of which the petitioner concedes that approximately $15,500 is due, leaving in controversy the sum of $23,544.27. In the case of Mrs. Elias Goldstein, the total amount of the deficiencies for the two years is $45,490.41, of which the petitioner concedes that approximately $21,000 is due, leaving in controversy $24,490.41.

These deficiencies arise from the refusal of the Commissioner to recognize the gift made by the petitioners, H. C. Walker, Jr., and Elias Goldstein, to their respective wives, and by his refusal to permit the deduction of any allowance for depletion arising from a transaction between the petitioners and Foster, Looney & Wilkinson.

## FINDINGS OF FACT.

Prior to June 20, 1919, H. C. Walker, Jr., and his wife, and Elias Goldstein and his wife, were the owners in community of certain oil leases, among them being one covering the south half of the northeast quarter of section 24, less the west 30 acres thereof, township 21 north, range 8 west, containing 51 acres more or less, in the Parish of Caddo, State of Louisiana. These leases stood in the name of Walker. On June 20, 1919, Walker together with one Muslow, executed and delivered to George O. Baird, the following instrument:

Before me, the undersigned authority, personally came and appeared Henry C. Walker, Jr., and Isaac Muslow, residents of Caddo Parish, Louisiana, who declared that they do by these presents transfer, sell, set over, assign and convey unto George O. Baird, husband of Estelle Mitchell, a resident of Caddo Parish, Louisiana, those certain oil and gas leases owned and held by them affecting land in Claiborne Parish, Louisiana, in so far as said leases cover and apply to the following described land, to-wit:

The South half (S ½) of the Northeast Quarter (NE ¼) of Section Twenty Four (24), less the West thirty (30) Acres thereof, Township Twenty one (21) North, Range Eight (8) West, containing Fifty one (51) Acres, more or less; that is to say, the said Henry C. Walker, Jr., transfers in so far as it affects the above described land that certain oil and gas lease executed by Len Langston to Len T. Langston, and by the said Len T. Langston assigned to the said Henry C. Walker, Jr.; and the said Isaac Muslow transfer in so far as it affects the above described land those certain oil and gas leases executed in his favor by George W. Shaw, Tutor, et al, and by Mrs. Lena Brown, which said leases and assignments are of record in the office of the Clerk and ex-official [sic] recorder of Claiborne Parish, Louisiana, and made part hereof by reference.

The consideration of this assignment is the sum of Four Thousand ($4000.00) Dollars cash, receipt of which is hereby acknowledged; and other valuable considerations.

Whereas the lease assigned by the said Henry C. Walker, Jr., purports to cover the entirety of the title to said land, and

Whereas the leases, the interest in which as to the above described land is assigned by the said Muslow, cover and applies to an undivided one-half interest therein, it is agreed that the obligation Geo. O. Baird, is restricted to the payment of a royalty of one-eighth (⅛) of the oil; that is to say, one-half (½) of the royalty of one-eighth (⅛) of the oil is to be delivered in any event to the lessor of the said Walker, his successors or assigns, and the remaining royalty of one-half (½) of one-eighth (⅛) is to be paid either to the lessors of the said Muslow, their successors or assigns, or to the said Walker's lessor, his successors or assigns, according to the result of the final determination of the suit involving the title to said undivided one-half interest, now pending in the Third Judicial District Court of Claiborne Parish, Louisiana, between the lessor of the said Walker and the lessors of the said Muslow.

Executed at Shreveport, Louisiana, in the presence of the undersigned competent witnesses and before me, Notary Public, on this the 20th day of June, 1919.

On the same day Baird executed and delivered to Walker the following instrument in writing:

Before me, the undersigned notary public in and for Caddo Parish, Louisiana, duly commissioned and qualified, came and appeared George O. Baird, husband of Estella Mitchell, a resident of Caddo Parish, Louisiana, who declared that:

Whereas on June 20th, 1919, H. C. Walker, Jr., and Ike Muslow, both residents of Caddo Parish, Louisiana, transferred and assigned to him the said George O. Baird certain oil, gas and mineral leases granted by Len Langston and by George W. Shaw, Tutor, et al, and by Mrs. Lena Brown, in so far as they affected the property described in the aforesaid assignment, the description of the aforesaid leases being more fully set forth in the aforesaid assignment; and

Whereas the aforesaid assignment recites a consideration of four thousand ($4000.00) dollars and other valuable considerations and is an assignment of the entire interest in the aforesaid leases in so far as they affect the aforesaid property; and

Whereas the aforesaid leases were owned exclusively by the said H. C. Walker, Jr., in so far as they affect the land described in the aforesaid assignment; and

Whereas the aforesaid assignment does not fully set forth the agreement between the said H. C. Walker, Jr., and the said George O. Baird;

Now, therefore, the said George O. Baird declares and acknowledges that he is the owner of only an undivided three-fourths (¾) interest in the aforesaid leases in so far as they affect the aforesaid fifty-one (51) acre tract described in the aforesaid assignment and that the aforesaid H. C. Walker, Jr., is the owner of the remaining one-fourth (¼) interest therein.

The said George O. Baird further declares and acknowledges that as part of the consideration for the execution of the aforesaid assignment to him he has bound and obligated himself to drill at his own expense a well for the production of oil on the aforesaid tract in event that the well now being drilled by the Standard Oil Company on the Loewenberg tract immediately north and adjacent to the aforesaid fifty-one (51) acre tract should produce oil or gas in paying quantities. If the aforesaid Standard Oil Company's well does not produce oil or gas in paying quantities and the said George O. Baird should elect nevertheless to drill a well for the production of oil or gas on the aforesaid fifty-one (51) acre tract, such well shall be drilled entirely at his own expense. The expense of drilling all subsequent wells, if any, on the aforesaid fifty-one (51) acre tract shall be borne by the said George O. Baird and H. C. Walker, Jr., in the proportion of their respective interests in the aforesaid leases.

The said George O. Baird further declares that he has bound and obligated himself at any time upon demand of the said H. C. Walker, Jr., his heirs or assigns, to execute a conveyance to him of the aforesaid undivided one-fourth (¼) interest in the aforesaid leases, subject to and in accordance with the terms of this counter-letter.

This done and signed in the presence of me, notary, and of the undersigned competent attesting witnesses, on this the 20th day of June, 1919.

(Signed)     GEO. O. BAIRD

WITNESSES:
Elias Goldstein
S. L. Herold,

(Signed)     J. A. THIGPEN,
*Notary Public in and for Caddo Parish, Louisiana.*

George O. Baird at this time was a member of and represented the partnership composed of himself, J. A. Thigpen, E. G. Palmer, R. T. Lane, and subsequent to his death, his widow, and Sydney L. Herold. The George O. Baird partnership proceeded to develop the properties by sinking gas wells. The first well was brought in on August 2, 1919, and the second well two days thereafter. In all, four wells were sunk prior to November 1, 1919, which developed first-flow capacity of 50,000 barrels daily.

In this state of affairs an option was given by Baird to one J. C. Pugh. At what date this option was given does not appear, but it is stipulated that it was given prior to November 1, 1919. Realizing that the gains from a sale of the lease would result in a large amount of income tax, and for the admitted purpose of avoiding the payment of such tax, the petitioners, H. C. Walker, Jr., and Elias Goldstein, each, on November 1, made a donation of his one-eighth interest to his wife. These donations were executed and recorded on the same dates and with the exception of the difference in names, are precisely alike. The donation of Walker to his wife is in words and figures, as follows:

Before me, the undersigned authority, a Notary Public, in and for Caddo Parish, Louisiana, duly commissioned and qualified, came and appeared Henry C. Walker, Jr., a resident of Caddo Parish, Louisiana, who declares that,

Whereas, he is the owner of an undivided one eighth ($\frac{1}{8}$) interest in and to a certain oil, gas and mineral lease granted by Len Langston to Len T. Langston and by Len T. Langston assigned to Henry C. Walker, Jr., and also of an undivided one-eighth ($\frac{1}{8}$) interest in and to a certain oil, gas and mineral lease granted by George W. Shaw, tutor, and others to Isaac Muslow, in so far as the aforesaid leases affect and apply to

South half of the Northeast quarter (S $\frac{1}{2}$ of NE $\frac{1}{4}$) Section (24) less West 30 acres (W 30 A) thereof Township 21 North, Range 8 West, Claiborne Parish, Louisiana, containing 51 acres, more or less, the record title to which leases in so far as they affect the above described tract of land being in George O. Baird, and the interest of the said H. C. Walker, Jr., being covered and set forth in a counter letter not of record, executed by the said George O. Baird. and

Whereas, he the said Henry C. Walker, Jr., desires that his wife, Mrs. Lurline Graham Walker should possess an independent fortune of her own.

Now, therefore, because of his love and affection for his said wife, he, the said Henry C. Walker, Jr., does by these presents grant, assign, convey and donate unto his wife, Mrs. Lurline Graham Walker, the aforesaid undivided one-eighth ($\frac{1}{8}$) interest, being all of the interest owned by him, in the aforesaid leases in so far as they affect and apply to the above described tract of land.

And hereunto appears the said Mrs. Lurline Graham Walker, for the purpose of accepting this donation.

This done and signed before me, Notary and in the presence of the undersigned competent witnesses on this 1st day of Nov. 1919.

These donations have not been revoked. Each husband administers his wife's affairs.

In December, 1919, the exact date not appearing, Pugh negotiated a sale of the lease to J. Roger Flannery, of Pittsburgh, Pa. The consideration for this sale was $2,500,000, of which Mr. Flannery paid prior to January 1, 1920, $500,000, and obligated himself to pay a further sum of $300,000 in January, 1920. When $800,000 was paid, Baird was to execute a deed conveying the lease, taking five notes of Flannery in the sum of $300,000 each, due on or before 30, 60, 90, 120, and 150 days, respectively, after the date of the deed, and one note of $200,000 due on or before 180 days after the date of the deed.

Flannery did not pay the $300,000, or any part thereof, which became due in January, 1920, nor did he make any further payments after paying the $500,000 above mentioned, and the contract between the George O. Baird partnership and Flannery was rescinded.

The sale to Flannery was made on the following basis: The commissions of Pugh and his associates were to be deducted from the purchase price, leaving a net purchase price of $2,162,000. Of this, it was estimated that $100,000 had been expended by the partnership in the drilling of wells, and the making of other improvements, and $62,500 was the approximate value of oil tanks which had been contracted for and which were to be placed on the property, leaving the net amount of $2,000,000, which was to be divided between the owners of the lease in proportion to their respective shares.

In December, 1920, Mrs. Walker and Mrs. Goldstein sold their interests in the lease to the remaining members of the George O. Baird partnership, for the sum of $250,000 each, or for what would have been their proportionate share of the total purchase price which would have been paid by Flannery had the sale not been rescinded.

The value of the shares of Mrs. Goldstein and Mrs. Walker, on November 1, 1919, the date of the donation, was $500,000, or $250,000 for each share.

The transactions between the petitioners and Foster, Looney & Wilkinson appear from an agreement entered into between them, dated June 23, 1920, which reads:

BEFORE ME, the undersigned authority, a Notary Public in and for Caddo Parish, Louisiana, duly commissioned and qualified, came and appeared George West, husband of Missouri Kimbell, a resident of Claiborne Parish, Louisiana, Henry C. Walker, Jr., husband of Lurline Graham, Elias Goldstein, husband of Fannie Levy, both residents of Caddo Parish, Louisiana, hereinafter referred to as vendors, and James M. Foster, a single man, Frank L. Looney, husband of Adeline Leonard, and W. A. Wilkinson, husband of Annie Carter, all residents of Caddo Parish, Louisiana, hereinafter referred to as vendees, who declared; that,

Whereas, there is pending in the United States District Court, for the Western District of Louisiana, a suit entitled Lillie G. Taylor, vs. George West, which suit is numbered 1235 on the docket of the aforesaid Court, and involves the title to:

All of the Southeast Quarter of the Southeast Quarter (SE ¼ of SE ¼), Section Eighteen (18) Lying South of the Minden and Sykes Ferry road; the Northeast Quarter of the Northeast Quarter (NE ¼ of NE ¼), Section Nineteen (19) ; and all of the Northwest Quarter of the Northeast Quarter (NW ¼ of NE ¼), Section Nineteen (19), except that part thereof known as a part of the Len Langston Farm; and the Northwest Quarter of the Northwest Quarter (NW ¼ of NW ¼) Section Twenty (20) Township Twenty one (21) North Range Seven (7) West, Claiborne Parish, Louisiana, being 91 acres, more or less; and:

Whereas, the aforesaid vendees have acquired from the aforesaid Lillie G. Taylor an interest equal to an undivided one-half (½) interest in the minerals in and under the aforesaid tract of land subject to the leases granted by the said Lillie G. Taylor, which interest, being one-half (½) of the entire royalty reserved by the said Lillie G. Taylor under the lease granted by her, amounts to an undivided one-sixteenth ($\frac{1}{16}$) of the oil, gas and other minerals produced and to be produced from the aforesaid premises; and,

Whereas, the aforesaid George West having granted an oil, gas and mineral lease affecting the above described tract of land and other lands, to the said Henry C. Walker, Jr., and the said H. C. Walker, Jr., having assigned the said lease to the Gulf Refining Company of Louisiana, reserving to himself and in his favor an undivided one-twenty-fourth ($\frac{1}{24}$) of all the oil, gas and other minerals produced from the aforeaid land; and,

Whereas, the parties hereto desire and have agreed to compromise the aforesaid law suit in so far as it relates to the interest above described, together with one-sixth (⅙) of the royalty reserved by the said George West under the aforesaid lease to H. C. Walker, Jr., which one-sixth (⅙) is equivalent to one-forty-eighth ($\frac{1}{48}$) of the oil, gas and other minerals produced from the aforesaid lease; and,

Whereas, all of the parties hereto have agreed that such compromise shall be effected by the sale by the said H. C. Walker, Jr., and the said Elias Goldstein, to the said Vendees of the said one-twenty-fourth ($\frac{1}{24}$) interest, and by a sale to the same parties by the said George West of an undivided one-forty-eighth ($\frac{1}{48}$) interest in the oil, gas and other minerals produced from the aforesaid land (including one-sixth (⅙) of the total royalty reserved by the said George West under the aforesaid lease) ;

The consideration of this sale is the sum of Two Hundred Thousand ($200,000.00) Dollars, to be paid entirely out of the oil produced from the above described tract of land, either by the lessees of the said George West and their assigns, or by the lessees of the said Lillie G. Taylor and their assigns and accruing to the credit of the undivided one-sixteenth ($\frac{1}{16}$) interest that is vested in the said vendees by reason of the purchase above referred to by them from the said Lillie G. Taylor on the one hand, and by reason of their purchase from the said vendors under this contract on the other hand.

Immediately upon the execution of this contract the said vendees shall be entitled to withdraw and receive from the Gulf Refining Company of Louisiana, all sums accruing to the credit of the interest hereby transferred to them by the said vendors, up to June 1st, 1920, which sums shall be retained by them free of any claim on the part of these vendors; but all sums hereinafter accruing to the credit of the aforesaid one-sixteenth ($\frac{1}{16}$) interest shall be paid by the lessees under the leases granted by the said George West and by Lillie G. Taylor, their heirs and assigns to the City Savings Bank & Trust Company of Shreveport, Louisiana, hereinafter referred to as the bank, which bank is hereby made the agent of all the parties hereto for the purpose of receiving such

royalty, acknowledging receipt thereof and holding and distributing the sums in accordance with the provisions of this contract.

The sums received by the said bank under this contract shall be deposited to the credit of an account to be known as " Escrow Account, George West, H. C. Walker, Jr., and Elias Goldstein", and shall be paid out by the said Bank as follows:

On the 2nd day of January, 1921, 1922, 1923, and 1924, the aforesaid bank shall withdraw from the said account the sum of Fifty Thousand ($50,000.00) Dollars, and shall credit same to the said vendors in the proportion of one-third ($\frac{1}{3}$) to each. In the event that there should not be sufficient funds to the credit of the aforesaid account to make such payment at the due date thereof, the said bank shall pay to the said vendors the entire amount to the credit of the said account, and shall continue to make payments from month to month as sums are received by it to the credit of the said account until the deficiency in the payment shall have been made up.

If the full sum of Two Hundred Thousand ($200,000.00) Dollars shall not have been received by the aforesaid bank on or before the 2nd day of January, 1924, then and in that event the royalties accruing to the credit of the aforesaid one-sixteenth ($\frac{1}{16}$) mineral interest shall continue to be paid to the said bank until it shall have received the full sum of Two Hundred Thousand ($200,000.00) Dollars; it being the intent of the parties to this contract that the said vendors shall receive Two Hundred Thousand ($200,000.00) Dollars out of the royalties accruing to the credit of the aforesaid undivided one-sixteenth ($\frac{1}{16}$) interest before the said vendees shall receive any further income from the aforesaid royalties or become entitled to any portion thereof.

Now, therefore, the said H. C. Walker, Jr., and Elias Goldstein do sell, transfer and convey unto the aforesaid vendees the excess royalty of one-twenty fourth ($\frac{1}{24}$) of all the oil, gas and other minerals reserved by them under the aforesaid lease granted by George West and assigned to the Gulf Refining Company of Louisiana in so far as same affects and applies to the above described tract of land; and the said George West sells, transfers and conveys to the said vendees an undivided one-forty-eighth ($\frac{1}{48}$) interest in the oil, gas and other minerals in and under the aforesaid land, including an undivided one-sixth ($\frac{1}{6}$) of the royalty reserved by him under the aforesaid lease in so far as same affects and applies to the above described tract of land under the following terms and conditions, and for the consideration as hereinafter set forth.

This sale is made without warranty of any kind even as to the return of the purchase price; and the execution of this instrument by the parties hereto shall not be regarded as a recognition by any of the vendees hereunder of the title of the said vendors to the interest herein conveyed or any part thereof, and shall not be construed as a recognition by the said vendors of any title or interest in the said Lillie G. Taylor and said vendees in and to the aforesaid land, and shall be entirely without effect upon the aforesaid suit now pending in the United States District Court, except with regard to the interest conveyed.

Subsequent to the execution of the above contract, the taxpayers acquired the interest of George West, but the amount of the consideration does not appear.

OPINION.

MILLIKEN: The first question presented is the effect of the donations made by the petitioners Goldstein and Walker, to their re-

spective wives of their then interests in the Baird oil lease. If the donations had the effect of vesting in the wives the then interests of their husbands and this was accomplished before the accrual of any gain, it is immaterial what was the motive that impelled the donors to make the gifts, even though that motive was to avoid the payment of taxes. Cf. *United States* v. *Isham*, 17 Wall. 496.

At the outset it should be observed that the sale to Flannery was not consummated until after the donations had been made, and further, that the sale to Flannery was rescinded after he had paid only one-fifth of the purchase price. The sale, which is the source of the controversy, was not the sale to Flannery, but a sale to the remaining members of the George O. Baird partnership, which was made a little over a year after the Flannery sale, and after Flannery had defaulted on his contract. It is clear, therefore, that if the donations were valid, the subject matter of the gift was not the gain from a sale, but was the donors' interests in the lease itself.

It should be further noted that there was no concealment or secretiveness about these donations. They were recorded in the proper office and are public records.

Articles 1746 and 1749 of the Civil Code of Louisiana provide:

1746.—One of the married couple may, either by marriage contract or during the marriage, give to the other, in full property, all that he or she might give to a stranger.

1749.—All donations made between married persons during marriage, though termed *inter vivos*, shall always be revocable.

The revocation may be made by the wife, without her being authorized to that effect by her husband, or by a court of justice.

The respondent contends that the donations were void and in support of his contention cites *Kelly* v. *Kelly*, 131 La. 1024; 60 So. 671. This case involved what the court held to be a gift from a husband to his wife of practically all that he possessed, and after quoting article 2446 of the Civil Code with reference to contracts of sale between husband and wife, held the gift void. The gist of the decision is found in the following excerpts:

It concerns the state that a donor should not pauperize himself.

Again:

In this case the evidence shows that the transfer of the lot and house in dispute was without legal consideration and left the husband without means of subsistence.

No such question arises in this proceeding. The respondent cites *Hanby* v. *Texas Co.*, 140 La. 189; 72 So. 933; and *Shaw* v. *Watson*, 151 La. 893; 92 So. 375, to the effect that the interests of the taxpayers in the oil lease in controversy fall within the category of immovables. He then refers to article 2404 of the Civil Code. The question raised by respondent was before the Supreme Court of Louisi-

ana in *Snowden* v. *Cruse*, 152 La. 144; 92 So. 764. In that case the court held a donation by a husband to a wife of his interest in community real estate was valid. The court said:

This is a partition suit. The defendants, five in number, are the uterine brothers and sisters of plaintiff. The real estate to be partitioned was purchased by plaintiff's father after his marriage to the mother of all the parties, and was donated by him to her during the marriage. The only issue involved is as to the proportions in which the property shall be divided; i. e., shall plaintiff receive one-half the property as sole heir of his father, and one-sixth of the other one-half as one of the six heirs of his mother; or shall each of the parties receive one-sixth of the whole property as equal heirs of their mother. And that involves the validity vel non of the donation made by the father to his wife; if the donation was void, then the property remained to the community, and must be divided in the proportions first stated; if the donation was valid, then the property belonged exclusively to the mother, and must be equally divided between her six children.

## 1.

The contention of plaintiff is that the donation was void because in contravention of the Civil Code, art. 2404 (2373), reading in part as follows:

" * * * He [the husband] can make no conveyance *inter vivos*, by a gratuitous title, of the immovables of the community, nor of the whole, or of a quota of the movables, unless it be for the establishment of the children of the marriage. * * * "

This limitation on the right of the husband, as head and master of the community, to do as he pleased with the effects of the community, was first introduced into our law by the Code of 1825, and is taken verbatim from the Code Napoleon, art. 1422.

The French authors, and the French jurisprudence, from the very first time the question arose before the Court of Cassation in 1850, have been unanimous and uniform that this provision concerns the wife alone, and hence if she joins her husband in the donation, it is valid as to her, and consequently as to all other persons. These authorities are gathered in a long list, to be found in Baudry-Lacantinerie, vol. 16, p. 612, note 2; and in Dalloz Code Annotee, art. 1422, Nos. 61–67.

After citing several cases, the court proceeds:

And it follows *a fortiori* that if the donation be made to the wife herself, the donation is all the more valid. Fuzier-Herman, vol. 3, p. 1010, art. 1422, No. 46.

The opinion concludes:

The proposition that the donation, even if valid, and no longer reducible, yet left the property in the community, is simply to say that the donation produced no effect, which is but to say in another form that the donation was void. This has already been considered.

We must, therefore, conclude that the donations of November 1, 1919, were valid under the law of Louisiana, and that the interests in the lease donated became the separate property of the donees under article 2334 of the Civil Code, which in part declares:

The property of married persons is divided into separate and common property.

Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds or by inheritance, or by donation made to him or her particularly.

The remaining question with reference to these donations, is whether the power of revocation, in article 1749 of the Civil Code, makes these donations merely colorable transactions, or, in other words, what effect, if any, does the power of revocation have on the ownership of or title to property donated.

Under the rule laid down in *Snowden* v. *Cruse*, *supra*, the property donated passed in each case from the community and became the wife's separate estate. The title to the donor's interest in the lease vested in the donee. The effect on the title to property granted of a power to revoke the grant and appoint to other uses is thus stated in *Jones* v. *Clifton*, 101 U. S. 225:

The powers of revocation and appointment to other uses reserved to the husband in the deeds in question do not impair their validity or their efficiency in transferring the estate to the wife, to be held by her until such revocation or appointment be made.

And, again:

The title to the land and the policies passed by the deeds; a power only was reserved. That power is not an interest in the property which can be transferred to another, or sold on execution, or devised by will.

Compare *Newhall* v. *Casey*, 18 Fed. (2d) 447, decided by the District Court of the United States for the District of Massachusetts, March 22, 1927.

The gifts have not been revoked. The title to the donors' interest in the lease passed by the donation to their respective wives, and the proceeds of the sale, which in this case involved no gain, went with the right of ownership. *Dillon* v. *Freville*, 129 La. 1005; 57 So. 316; *Sharp* v. *Zeller*, 110 La. 61; 34 So. 129. The proceeds of the sale of the interests donated were the separate property of the donees. Since the donors had at the time of the sale no title, no right of ownership, nothing except a power of revocation, they can not be held to have had any right to the proceeds arising from the interests donated, nor can they be taxed upon any gain arising therefrom.

That the contract of sale to Flannery was made in good faith, is shown by the fact that before he defaulted, Flannery had paid $500,000 on the purchase price. This contract of sale, which was made by a willing seller to a willing buyer, and which was consummated shortly after the date of the donations, and under an option granted just prior to that date, is the best evidence of the value of the donees' interests in the lease donated at the time the donations were made. The value thus established is also borne out by the testimony of the witnesses, two of whom, E. G. Palmer and George O. Baird,

are experienced oil men. The amounts received by Mrs. Walker and Mrs. Goldstein from the George O. Baird partnership, for the interests given them by their husbands, are precisely what they would have received if the Flannery sale had not been rescinded. It is clear, therefore, that the amounts received by the donees for so much of their interests in the lease as they received by virtue of the donations were not greater than the value of the interests at the date of the donation.

The remaining question is whether the petitioners should be permitted to take as a deduction a depletion allowance against the gain made by them in the transaction with Foster, Looney & Wilkinson.

The contract between the petitioners and West on one side, and Foster, Looney & Wilkinson on the other, refers to the petitioners and West as " vendors " and to Foster, Looney & Wilkinson as " vendees," which term we adopt for the purpose of this opinion. It recites that in consideration of $200,000, to be paid entirely out of the oil produced on the tract of land described in the contract " the said H. C. Walker, Jr., and Elias Goldstein do sell, transfer and convey unto the aforesaid vendees the excess royalties of one twenty-fourth (1/24) of all the oil, gas and other minerals reserved for them under the aforesaid lease  *  *  *."

Petitioners claim that we should disregard the words used in the contract and look to its substance, and that when so viewed it was not a contract of sale but that under it their rights as lessors were continued until they had received $200,000 out of the oil and that by the contract the petitioners and George West were recognized as the owners of the one-sixteenth royalty interest which was the subject of the contract. These contentions are not borne out by the recitals and the provisions of the contract. It clearly appears that the vendors and vendees were claiming under adverse titles, and that the purpose of the agreement was not to recognize the rights of each other, but to settle the controversy by a compromise of that which had theretofore been contested. The sum of $200,000 was " to be paid entirely out of the oil produced from the above described tract of land, either by the lessees of the said George West and their assigns, or by the lessees of the said Lillie G. Taylor and their assigns and accruing to the credit of the undivided one-sixteenth (1/16) interest that is vested in the said vendees by reason of the purchase above referred to by them from the said Lillie G. Taylor on the one hand, and by reason of their purchase from the said vendors under this contract on the other hand."

It thus appears that the $200,000 was not payable to the petitioners and West out of their interest in the oil, but was payable out of the interest of the vendees, which they had acquired from Lillie G. Taylor, and from the petitioners and West.

Putting aside the fact that the contract uses the words "sell, transfer and convey," and the words "vendors" and "vendees," and looking to the substance of the contract alone, the conclusion can not be escaped that the contract was a contract of sale which divested the taxpayers and West of all interest in the property therein referred to, and vested *eo instanti* the title thereto in the vendees for the consideration of $200,000, payable out of the royalties the contract for which was assigned to the vendees. Such being the case, the respondent did not err in refusing to allow the petitioners a deduction for depletion.

> *Judgment will be entered in accordance with the above decision, on 20 days' notice, under Rule 50.*