(72 South. 933)

No. 22007.

HANBY v. TEXAS CO. (LAKE FRONT OIL & GAS CO., Intervener).

In re LAKE FRONT OIL & GAS CO.

(Oct. 16, 1916. Rehearing Denied Nov. 13, 1916.)

*(Syllabus by the Court.)*

EVIDENCE ⬤⟶418 — PAROL EVIDENCE AFFECTING WRITINGS—ADMISSIBILITY.

The conveyance of an interest in all the oil, gas, and other minerals, supposed or hoped to be found beneath the surface of a particular tract of land, though it conveys no title to any specific oil or gas, carries with it the right to explore the land in search of those minerals, which, quoad the land, is a jus in re, and, its classification being determined by the character of the object to which it is applied, it falls within the category of immovables, and the title thereto cannot be destroyed, and a new title created in its stead, by parol evidence, on the ground that it was acquired by an agent, in his own name, instead of the name of his principal.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1722, 1906–1911; Dec. Dig. ⬤⟶ 418.]

O'Niell, J., dissenting.

Action by William F. Hanby against the Texas Company, in which the Lake Front Oil & Gas Company intervenes. Application by the intervener for certiorari or writ of review. Application dismissed.

James E. Smitherman, of Shreveport, for appellant. Elias Goldstein and Crain & Walker, all of Shreveport, for appellee Hanby. Thigpen & Herold, of Shreveport, amici curiæ.

MONROE, C. J. The oil produced upon a certain tract of land in Caddo parish was being delivered into the pipe lines of the Texas Company, and, up to February 1, 1915, the proceeds were being paid by that company, in certain proportions, to the Lake Front Oil & Gas Company, T. H. Spencer, and Mrs. Florence Hanby, wife of William F. Hanby; but on January 30, 1915, the Lake Front Company notified the Texas Company to make no more payments to Mrs. Hanby, and, the payments having been thereafter withheld, this suit was brought by W. F. Hanby, the husband, to compel their continuance, it being alleged that the interest involved had been acquired by Mrs. Hanby for the benefit of the community. The Texas Company answered, setting up the notice given by the Lake Front Company as its only reason for withholding the payments, and expressing the desire that the dispute between that company and Mrs. Hanby be settled by judgment

of court. The Lake Front Company then intervened, alleging and praying as follows: That in August and September, 1913, Messrs. Clark, Nield, Holmes, Wickersham, Spencer, and Hanby entered into an agreement to organize a corporation for the exploiting for oil and gas of a certain tract of land of which Hanby had knowledge; that each of the five first named was to advance $500, for which they were each to receive 2,000 shares, of the par value of $1 per share, of the stock of the corporation, and that Hanby was to act as the agent of the company, at his own expense, until a well should be brought in, when he was to receive 2,000 shares of the stock for his services; that Clark, Nield, Holmes, and Wickersham each advanced the amount agreed on, but that Spencer did not; that the corporation was organized, with Spencer as president; that Hanby disclosed the location of the land, which was visited by the promoters and officers of the company; and that Spencer, as the agent of intervener, purchased an undivided nine-sixteenths interest therein, excluding "an undivided interest equal to one acre," but that, colluding with Hanby to defraud intervener, they caused the conveyance to be made by two acts of the same date and before the same notary, the one to Spencer, agent, of an undivided nine-sixteenths of the tract in question, excluding the one acre, and less an undivided one-sixth interest in the oil, gas, and other minerals underlying the land so conveyed, and the other to Spencer individually and Mrs. Hanby of the undivided one-sixth interest withheld by the vendor in the act first mentioned; that the entire consideration paid to the vendor was $906.25, the money of intervener, and that the recited consideration of $2,000 in the one act and $500 in the other was so recited at the instance of Spencer and Hanby for the purpose of deceiving and defrauding intervener; that in October, 1913, Spencer conveyed to inter-

vener the property described in the act first above mentioned, representing that his vendor had been willing to part with the same only upon condition that he be permitted to reserve an interest in the minerals; "that, the royalty interest or interest in the minerals having been purchased with the funds and money of your petitioner, and having been acquired by the agents of your petitioner in their said capacity as agents, and having been fraudulently and unlawfully withheld from it, your petitioner is the owner of the same, including the royalties, property, and money sued for by plaintiff herein; and that petitioner should be recognized owner thereof by this court."

There are further allegations to the effect that Hanby, acting as intervener's agent purchased the "undivided interest equal to one acre," to which we have referred, with money furnished by intervener; that he afterwards conveyed it to intervener, with a reservation of an undivided one-sixth interest in the underlying oil and other minerals, falsely alleging that he had so acquired it, but that he subsequently conveyed said one-sixth interest to Spencer, without consideration, and that Spencer conveyed it to intervener, made restitution of all royalties received by him, and acknowledged that they had been wrongfully received, but that Hanby and Mrs. Hanby refused to make such restitution or to relinquish the claim here set up.

The prayer of the intervener is:

"That there be judgment * * * decreeing petitioner to be the owner of all the royalties and of the property sued for herein by plaintiff, including the oil and proceeds thereof [as described] together with all future royalties derived from said property."

The evidence which was admitted established the facts that the nine-sixteenth interest in the property in question, less the "undivided interest therein equal to one acre," was acquired by Spencer, as agent, and conveyed to intervener, and that the one-

sixth undivided interest in the underlying minerals was acquired, as alleged, by Spencer and Mrs. Hanby individually. Parol evidence offered in support of intervener's attack upon the title to said one-sixth interest so acquired was excluded.

We find in the record no evidence or offer of evidence concerning the acquisition by intervener, from Spencer of the one-sixth interest in the minerals underlying the "undivided interest equal to one acre."

The Court of Appeal approved the ruling of the trial court excluding the parol evidence, and affirmed the judgment appealed from. Intervener, in its application for the review of the judgment of the Court of Appeal, assigns error as follows:

"I. The court erred in holding that the intervener had taken the position that, because its money was used by the plaintiff in purchasing the property in question, it therefore was the legal and equitable owner of the property. The position which the intervener took in its intervention, as will be disclosed by examination of its petition, was that Hanby, the plaintiff herein, was its general agent, clothed with authority to buy real estate, and that, while acting in this fiduciary capacity and pursuant to his general authority, he purchased certain property, title to which he took in his own name; that, while it is not permissible to attack the legality of the authentic act by which he bought the said property, our court will follow its own equitable rule and that followed in other states, and compel the agent to do what he should voluntarily do, viz. transfer the property so purchased by him to his principal, for whom it was purchased, and whose money paid the price."

The allegation which we have above quoted from the petition of intervention appears to us to be quite explicit to the effect that, by reason of the fact that the property or interest here claimed was purchased by intervener's agents, with its money, "your petitioner is the owner of the same, including the royalties, property, and money sued for by plaintiff herein, and should be recognized as owner thereof by this court."

And the prayer of the petitioner is equally explicit, that "there be judgment in favor of petitioner decreeing it to be the owner of

140 LA.—7

all the royalties and of the property sued for herein by plaintiff," etc.

"II. Intervener contends that the property involved in this suit is not immovable property, and that the Court of Appeal has fallen into error in holding that the reservation or the sale of a one-sixth interest in and to the oil and gas in and under a certain tract of land was the reservation (or sale) of a real right, or incorporeal immovable."

The Civil Code declares that:

"Art. 463. There are things immovable by their nature, others by their destination, and others by the object to which they are applied."

"Art. 470. Incorporeal things, consisting only in a right, are not of themselves strictly susceptible of the quality of movables or immovables; nevertheless they are placed in one or the other of these classes, according to the object to which they apply and the rules hereinafter established.

"Art. 471. The following are considered as immovable from the object to which they apply:

"The usufruct and use of immovable things. A servitude established on an immovable estate. An action for the recovery of immovable estate or an entire succession."

Conceding that the sale of an interest in the oil or gas which may be discovered beneath the surface of a particular tract of land conveys no title to any specific oil or gas, it nevertheless carries with it the right to make use of the surface of the land for the reduction to possession of the oil or gas that may be found; and, in fact, the right last mentioned is alone conveyed in such case, since it is the only right, with respect to those fugitive products, that the owner of the land himself can be said to possess. That right, however, he does possess, since it is a right of use, or of enjoyment, and hence a constituent of his title to the land, and, so possessing, he may dispose of it, since the three things, usus, fructus, and abusus, forming, in conjunction, full ownership, may be separated, and the title dismembered, and in that event the rights respectively resulting from such dismemberment retain the nature of the thing upon which they bear as though no dismemberment had occurred.

"Every dismemberment of the right of property," says Marcadé in commenting on article 526

of the Code Napoléon, which is the same as the article 471 of our Code, "every servitude, is called a jus in re a right in the thing. 'Jus in re' and 'dismemberment of property' are synonymous expressions. * * * It is perfectly clear from the moment that we begin to class rights into movables and immovables, that the full right of property of the thing, and the secondary rights, dismembered from such principal right, can receive no other nature than that of the thing itself." Marcadé on C. N. 526 (11. No. 1).

See, also, Queensborough Land Co. v. Cazeaux, 136 La. 736, 67 South. 641, L. R. A. 1916B, 1201, Ann. Cas. 1916D, 1248; Rives v. Gulf Refining Co., 133 La. 186, 62 South. 623; Cooke v. Same, 135 La. 616, 65 South. 758; Strother v. Mangham, 138 La. 437, 70 South. 426.

If, then, the one-twelfth interest acquired by Mrs. Hanby "in all the gas, oil, and other minerals in and under" the land in question, carrying with it, as it does, the right to explore the land in search of those minerals (C. C. arts. 1903, 2461, 2490, 2645), is a right in the land, as we hold it to be, and hence an immovable, by classification it follows that the title thereto cannot be destroyed and another title established by parol evidence. C. C. arts. 2275, 2276, 2292.

"The fraud by which a person buys real estate in his own name, instead of in that of his principal, is not provable by parol." Barrow v. Grant's Estate, 116 La. 953, 41 South. 220 (quoted from syllabus).

"We are not disposed, and see no good reason, to disturb the conclusion reached by the majority of the court [referring to the majority opinion in Hackenburg v. Gartskamp, 30 La. Ann. 898] that, under the law of Louisiana, the general rule forbidding the establishment of title to real estate by parol evidence finds no exception in the case of a fraudulent violation of an alleged parol mandate to buy." Perrault, Tutrix, v. Perrault, 32 La. Ann. 635.

See, also, Dohan v. Dohan, 42 La. Ann. 449, 7 South. 569; Sagory v. Bouny, 42 La. Ann. 618, 7 South. 785; Whelage v. Lotz, 44 La. Ann. 600, 10 South. 933; Hoffmann v. Ackermann, 110 La. 1070, 35 South. 293; Succession of Block, 137 La. 307, 68 South. 618; Edenborn v. Blacksher, 137 La. 898, 69 South. 737.

We therefore concur in the view that the parol evidence offered by intervener was properly excluded.

As we have already noted, the allegations of intervener's petition concerning its acquisition from Spencer of the one-sixth interest in the oil under the surface of the "undivided interest equal to one acre" is unsupported by proof, and we find no error in the judgment complained of.

This application is therefore dismissed at the cost of the applicant.

O'NIELL, J., dissents.