*1148 OPINION.
Milliicen:
The first question presented is the effect of the donations made by the petitioners Goldstein and Walker, to their re *1149 spective wives of their then interests in the Baird oil lease. If the donations had the effect of vesting in the wives the then interests of their husbands and this was accomplished before the accrual of any gain, it is immaterial what was the motive that impelled the donors to make the gifts, even though that motive was to avoid the payment of taxes. Cf. United States v. Isham, 17 Wall. 496.
At the outset it should be observed that the sale to Flannery was not consummated until after the donations had been made, and further, that the sale to Flannery was rescinded after he had paid only one-fifth of the purchase price. The sale, which is the source of the controversy, was not the sale to Flannery, but a sale to the remaining members of the George O. Baird partnership, which was made a little over a year after the Flannery sale, and after Flannery had defaulted on his contract. It is clear, therefore, that if the donations were valid, the subject matter of the gift was not the gain from a sale, but was the donors’ interests in the lease itself.
It should be further noted that there was no concealment or secretiveness about these donations. They were recorded in the proper office and are public records.
Articles 1746 and 1749 of the Civil Code of Louisiana provide:
1746. — One of the married couple may, either by marriage contract or during the marriage, give to the other, in full property, all that he or she might give to a stranger.
1749. — All donations made between married persons during marriage, though termed inter vivos, shall always be revocable.
The revocation may be made by the wife, without her being authorized to that effect by her husband, or by a court of justice.
The respondent contends that the donations were void and in support of his contention cites Kelly v. Kelly, 131 La. 1024; 60 So. 671. This case involved what the court held to be a gift from a husband to his wife of practically all that he possessed, and after quoting article 2446 of the Civil Code with reference to contracts of sale between husband and wife, held the gift void. The gist of the decision is found in the following excerpts:'
It concerns the state that a donor should not pauperize himself.
Again:
In this case the evidence shows that the transfer of the lot and house in dispute was without legal consideration and left the husband without means of subsistence.
No such question arises in this proceeding. The respondent cites Hanby v. Texas Co., 140 La. 189; 72 So. 933; and Shaw v. Watson, 151 La. 893; 92 So. 875, to the effect that the interests of the taxpayers in the oil lease in controversy fall within the category of immov-ables. He then refers to article 2404 of the Civil Code. The question raised by respondent was before the Supreme Court of Louisi *1150 ana in Snowden v. Cruse, 152 La. 144; 92 So. 764. In that case the court held a donation by a husband to a wife of his interest in community real estate was valid. The court said:
This is a partition suit. The defendants, five in number, are the uterine brothers and sisters of plaintiff. The real estate to be partitioned was purchased by plaintiff’s father after his marriage to the mother of all the parties, and was donated by him to her during the marriage. The only issue involved is as to the proportions in which the property shall be divided; i. e., shall plaintiff receive one-half the property as sole heir of his father, and one-sixth of the other one-half as one of the six heirs of his mother; or shall each of the parties receive one-sixth of the whole property as equal heirs of their mother. And that involves the validity vel non of the donation made by the father to his wife; if the donation was void, then the property remained to the community, and must be divided in the proportions first stated; if the donation was valid, then the property belonged exclusively to the mother, and must be equally divided between her six children.
1.
The contention of plaintiff is that the donation was void because in contravention of the Civil Code, art. 2404 (2373), reading in part as follows:
“ * * * He [the husband] can make no conveyance inter vivos, by a gratuitous title, of the immovables of the community, nor of the whole, or of a quota of the movables, unless it be for the establishment of the children of the marriage. * * * ”
This limitation on the right of the husband, as head and master of the community, to do as he pleased with the effects of the community, was first introduced into our law by the Code of 1825, and is taken verbatim from the Code Napoleon, art. 1422.
The French authors, and the French jurisprudence, from the very first time the question arose before the Court of Cassation in 1850, have been unanimous and uniform that this provision concerns the wife alone, and hence if she joins her husband in the donation, it is valid as to her, and consequently as to all other persons. These authorities are gathered in a long list, to be found in Baudry-Lacantinerie, vol. 16, p. 612, note 2; and in Dalloz Code Annotee, art. 1422, Nos. 61-67.
After citing several cases, the court proceeds:
And it follows a fortiori that if the donation be made to the wife herself, the donation is all the more valid. Fuzier-Herman, vol. 3, p. 1010, art. 1422, No. 46.
The opinion concludes:
The proposition that the donation, even if valid, and no longer reducible, yet left the property in the community, is simply to say that the donation produced no effect, which is but to say in another form that the donation was void. This has already been considered.
We must, therefore, conclude that the donations of November 1, 1919, were valid under the law of Louisiana, and that the interests in the lease donated became the separate property of the donees under article 2334 of the Civil Code, which in part declares:
The property of married persons is divided into separate and common property.
*1151 Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds or by inheritance, or by donation made to him or her particularly.
The remaining question with reference to these donations, is whether the power of revocation, in article 1749 of the Civil Code, makes these donations merely colorable transactions, or, in other words, what effect, if any, does the power of revocation have on the ownership of or title to property donated.
Under the rule laid down in Snowden v. Cruse, supra, the property donated passed in each case from the community and became the wife’s separate estate. The title to the donor’s interest in the lease vested in the donee. The effect on the title to property granted of a power to revoke the grant and appoint to other uses is thus stated in Jones v. Clifton, 101 U. S. 225:
The powers of revocation and appointment to other uses reserved to the husband in the deeds in question do not impair their validity or their efficiency in transferring the estate to the wife, to be held by her until such revocation or appointment be made.
And, again:
The title to the land and the policies passed by the deeds; a power only was reserved. That power is not an interest in the property which can be transferred to another, or sold on execution, or devised by will.
Compare Newhall v. Casey, 18 Fed. (2d) 447, decided by the District Court of the United States for the District of Massachusetts, March 22, 1927.
The gifts have not been revoked. The title to the donors’ interest in the lease passed by the donation to their respective wives, and the proceeds of the sale, which in this case involved no gain, went with the right of ownership. Dillon v. Freville, 129 La. 1005; 57 So. 316; Sharp v. Zeller, 110 La. 61; 34 So. 129. The proceeds of the sale of the interests donated were the separate property of the donees. Since the donors had at the time of the sale no title, no right of ownership, nothing except, a power of revocation, they can not be held to have had any right to the proceeds arising from the interests donated, nor can they be taxed upon any gain arising therefrom.
That the contract of sale to Flannery was made in good faith, is shown by the fact that before he defaulted, Flannery had paid $500,000 on the purchase price. This contract of sale, which was made by a willing seller to a willing buyer, and which was consummated shortly after the date of the donations, and under an option granted just prior to that date, is the best evidence of the value of the donees’ interests in the lease donated at the time the donations were made. The value thus established is also borne out by the testimony of the witnesses, two of whom, E. G. Palmer and George O. Baird, *1152 are experienced oil men. The amounts received by Mrs. Walker and Mrs. Goldstein from the George O. Baird partnership, for the interests given them by their husbands, are precisely what they would have received if the Flannery sale had not been rescinded. It is clear,.therefore, that the amounts received by the donees for so much of their interests in the lease as they received by virtue of the donations were not greater than the value of the interests at the date of the donation.
The remaining question is whether the petitioners should be permitted to take as a deduction a depletion allowance against the gain made by them in the transaction with Foster, Looney & Wilkinson.
The contract between the petitioners and West on one side, and Foster, Looney & Wilkinson on the other, refers to the petitioners and West as “vendors” and to Foster, Looney & Wilkinson as “ vendees,” which term we adopt for the purpose of this opinion. It recites that in consideration of $200,000, to be paid entirely out of the oil produced on the tract of land described in the contract “ the said FI. C. Walker, Jr., and Elias Goldstein do sell, transfer and convey unto the aforesaid vendees the excess royalties of one twenty-fourth (1/24) of all the oil, gas and other minerals reserved for them under the aforesaid lease * * *.”
Petitioners claim that we should disregard the words used in the contract and look to its substance, and that when so viewed it was not a contract of sale but that under it their rights as lessors were continued until they had received $200,000 out of the oil and that by the contract the petitioners and George West were recognized as the owners of the one-sixteenth royalty interest which was the subject of the contract. These contentions are not borne out by the recitals and the provisions of the contract. It clearly appears that the vendors and vendees were claiming under adverse titles, and that the purpose of the agreement was not to recognize the rights of each other, but to settle the controversy by a compromise of that which had theretofore been contested. The sum of $200,000 was “ to be paid entirely out of the oil produced from the above described tract of land, either by the lessees of the said George West and their assigns, or by the lessees of the said Lillie G. Taylor and their assigns and accruing to the credit of the undivided one-sixteenth (1/16) interest that is vested in the said vendees by reason of the purchase above referred to by them from the said Lillie G. Taylor on the one hand, and by reason of their purchase from the said vendors under this contract on the other hand.”
It thus appears that the $200,000 was not payable to the petitioners and West out of their interest in the oil, but was payable out of the interest of the vendees, which they had acquired from Lillie G. Taylor, and from the petitioners and West.
*1153 Putting aside the fact that the contract uses the words “ sell, transfer and convey,” and the words “ vendors ” and “ vendees,” and looking to the substance of the contract alone, the conclusion can not be escaped that the contract was a contract of sale which divested the taxpayers and West of all interest in the property therein referred to, and vested eo instanti the title thereto in the vendees for the consideration of $200,000, payable out of the royalties the contract for which was assigned to the vendees. Such being the case, the respondent did not err in refusing to allow the petitioners a deduction for depletion.
Judgment will be entered in accordance with the above decision, on W days’ notice, under Rule 50.