REGAN, Judge.
The plaintiffs, Dr. Laurance R. Rolling, Julian Emanuel Rolling, Earl W. Rolling[1], Alfred B. Rolling[2], all as forced heirs, instituted this suit in the Succession of Julia Bonnabel Rolling against the defendant, Miss Bonnie W. Rolling, their sister, individually and as executrix, endeavoring to have judicially declared as simulated, certain sales of real property conveyed to the defendant and also charging her with misappropriation of various funds; in the alternative, they insisted that the defendant be ordered to collate the value of the property and to restore to the succession the misappropriated funds.
Defendant then filed a petition against each plaintiff, demanding collation of donations of real and personal property made by the decedent’ during her lifetime.
All of the plaintiffs answered the foregoing petitions and denied receipt of the donations, with the exception of Earl W. Rolling, who conceded that he had not paid his mother anything for his property.
The plaintiffs, all sons of the decedent, renounced collation as to each other.
Defendant in response to plaintiffs’ original petition pleaded various exceptions which were overruled.
Defendant then answered generally denying plaintiffs’ allegations and asserted that she was the true and lawful owner of the properties and that she had not misappropriated any funds belonging to the succession.
The lower court rendered a judgment ordering the defendant, Miss Bonnie W. Rolling, to collate $237.33 to each of the six heirs of Earl W. Rolling and Alfred B. Rolling, and $362 to Dr. Laurance R. Rolling, and Julian Emanuel Rolling to collate $24 in favor of the defendant. From that judgment Dr. Laurance R. Rolling, Julian Emanuel Rolling and the heirs of Alfred B. Rolling have prosecuted this appeal. The defendant neither appealed nor answered the appeal.
The trial judge thoroughly analyzed both the facts and the law applicable to this case in his written reasons for judgment which, in our opinion, encompass the issues so fully, that we adopt them as our own.
“This matter comes before this court on a petition by Dr. Laurance R. Rolling, (Julian) Emanuel Rolling, Earl W. Rolling, *294 and Alfred B. Rolling. (Earl W. Rolling having died prior to the trial and his heirs, Earl A. Rolling, Raymond L. Rolling, and Mrs. Ruth Rolling Massa, were made parties in his stead; and Alfred B. Rolling, having died prior to the trial and his heirs, Bonnabel Rolling, Charles Rolling and Le-ora Rolling, were made parties in his stead.) This petition asks that Miss Bonnie W. Rolling collate in kind or money for the following property:
“1. A working interest in an oil lease, alleged value of $2,000.00.
"2. Property located at 1129 Metairie Road, alleged value of $25,000.00.
“3. Avenue ‘A’ property (vacant), alleged value of $3,250.00.
“4. Various Covington properties, forming one piece of real estate, alleged value of $425.00.
“5. Improvements constructed on Cov-ington property, alleged value of $4,000.00.
“6. Cherokee Street property, alleged value of $5,900.00.
“7. $18,000.00 alleged to have been taken from a safe deposit box.
“The allegations in essence are that Mrs. Julia Bonnabel Rolling, decedent, and mother of all parties hereto, either gave to, or bought for, Miss Bonnie W. Rolling, all of the above property.
“Also before the court are the petitions for collation by Miss Bonnie W. Rolling against:
“1. Alfred B. Rolling for $2,300.00 advanced to him by his mother.
“2. Earl W. Rolling for Bonnabel Place Property, valued at $3,000.00.
“3. Dr. Laurance R. Rolling, for Stella Street property, valued at $4,000.00.
“4. (Julian) Emanuel Rolling for Codi-fer Boulevard property, valued at $3,680.-00.
“Most of the testimony taken at the trial concerned the property referred to as 1129 Metairie Road, Metairie, Louisiana, or simply as ‘Metairie Road Property’.
“This Metairie Road property fronts some 120 feet on Metairie Road by a depth of 300 feet. The property was sold by notarial act to Miss Bonnie W. Rolling on January 14, 1941, for a recited consideration of $3,500.00 and the usufruct to the seller, her mother, for a period of her lifetime. The attack here is leveled at the sale on the ground that the sale is a simulation and hence of no effect; that under Article 2480[3] of the LSA-Civil Code. the seller remained in possession under a usufruct and hence the presumption is that the sale is simulated and that under Article 2444[4] of the LSA-Civil Code the price was not paid or that the price is less than one-fourth of the value of the property as of the date of the sale, and hence that the sale is void.
“The court finds that the stated price of $3,500 was paid. This consideration was paid on January 21, 1941, by check which is in evidence. The source of this money is clear, there having been evidence introduced showing that there was $3,000.-00 withdrawn from a savings account of Miss Bonnie W. Rolling the same day, and evidence to the effect that Miss Bonnie W. Rolling borrowed $500.00 on the same day from the First National Bank of Gretna, and that she took the resulting $3,500.00 and placed this in a checking account; that *295 she then wrote a check to her mother in the amount of $3,500.00 and her mother took the check and deposited it to the account of herself, and that the mother withdrew sums therefrom in small amounts over a period of years. The fact that the payment was made one week after the date of the notarial act is of no consequence, as held in Exposito v. Lapeyrouse, [La.App.] 195 So. 814. The fact that $3,500.00 was paid defeats the assertion that the sale was simulated, for a simulated sale is where no price is paid and if any price, no matter how inadequate, is paid, there is no simulation. See Eureka Homestead Soc. v. Baccich, 190 La. 494, 182 So. 653, and Freeman v. Woods, [La.App.] 1 So.2d 134.
“The court feels that the * * * presumption of Article 2480 of the Revised Civil Code is rebutted by the fact that $3,-500.00 was paid and also by the additional fact that Miss Bonnie W. Rolling was as much in possession as her mother by living with her mother.
“Two real estate experts were produced by the four brothers in an attempt to prove a valuation on the Metairie Road property of $25,000.00 as of January 14, 1941. These experts stated that the value of the property in their opinion was $25,000.00. These experts testified that there were similar sales around that time which would bear out the valuations, but did not introduce any sale which was comparable to the Metairie Road property. The real estate expert for Miss Bonnie W. Rolling gave a valuation of $10,500.00 and also produced for introduction into the record a number of sales evidenced by certified photostatic copies thereof, some of which are remote and some of which are in close proximity to the Metairie Road property. The court feels that the testimony of the two experts who testified to a value of $25,000.00 must be discounted as mere opinions because not corroborated by any reasoning. Taylor v. Brown, 223 La. 641, 66 So.2d 578, and In re Anderson’s Succession, 231 La. 195, 91 So.2d 8.
“In connection with the testimony of the real estate expert for Miss Bonnie W. Rolling a number of sales were introduced in evidence, and the court is particularly impressed by Exhibit No. 50, which was a sale for $8,000.00 for a house one block from the Metairie Road property, only ten months after the January 14, 1941 sale, very comparable to the house at 1129 Me-tairie Road. This house was new, and the lot measured 50 feet front on Metairie Road by a depth of 120 feet. The court finds, after weighing all of the facts and testimony, that the correct value of the Metairie Road property as of January 14, 1941, was $12,500.00.
“As can be seen, Article 2444 of the Revised Civil Code does not apply, because the price actually paid'was $3,500.00 plus the value of the use and enjoyment of the property for the actual lifetime of the usu-fructuary. (See Parker v. Talbot,. 37 La.Ann. 22) The mother lived for a period of 68 months after the sale. During this time the value of use and enjoyment should be $80.00 per month (the property was actually rented at this figure for a part of this period.) This gives a figure for the use and enjoyment of $5,440.00, which added to the $3,500.00, makes a total of $8,940.00 for which Miss Bonnie W. Rolling should be given credit as having paid. However, the court feels that under Article 1248 [5] of the Revised Civil Code, Miss Bonnie W. Rolling has received an advantage of $3,-560.00 which she should collate[6]; see Succession of Lamott [Lamotte], 110 La. *296 42, 34 So. 122, and Montgomery v. Chaney, 13 La.Ann. 207.
“The court does not feel that any proof has been offered as to the $18,000.00 alleged to have been taken from the safe deposit box by Miss Bonnie W. Rolling.
“The other assertions against Miss Bonnie W. Rolling all bear against real estate, except the interest in the oil and gas lease, which is of the same nature. These were all sales to Miss Bonnie W. Rolling by third parties, and her mother never owned the said property. Ownership cannot be established in the decedent or her succession by parol testimony. Scurto v. Le Blanc, 191 La. 136, 184 So. 567. Also Hanby v. Texas Co., 140 La. 189, 72 So. 933, as to an oil and gas lease or interest.
“Miss Bonnie W. Rolling denied that the properties were paid for by her mother or bought for her mother. No adequate proof has been adduced to contradict her assertion that she paid for these properties herself from her own monies. Accordingly, the court feels that these claims against Miss Bonnie W. Rolling must fall.
“The claims by Miss Bonnie W. Rolling against Earl W. Rolling and Alfred B. Rolling were not proven.
“Dr. Laurance R. Rolling admitted that the Stella Street property sold to him by his mother for a recited consideration of $800.00 was not paid. His mother had just previously bought the Stella Street property for the sum of $1,750.00. Under Article 2444 of the Revised Civil Code, the court believes Dr. Laurance R. Rolling should collate the sum of $1,750.00.
“(Julian) Emanuel Rolling admitted in his testimony that he had not paid for the Codifer Boulevard lot or the house built thereon. He testified that he gave his mother a note and mortgage for $4,000.00 thereon to secure what she gave him and that after his mother’s death the unpaid note for $4,000.00 was returned to him. Since Miss Bonnie W. Rolling has prayed for collation of $3,680.00[7], the collation due by (Julian) Emanuel Rolling must be limited to that amount.
“Since the brothers have filed in the record an agreement that there shall be no collation among themselves, the collation ordered herein against Dr. Laurance R. Rolling and (Julian) Emanuel Rolling shall be limited to the amount of the collation due Miss Bonnie W. Rolling, that is, one-fifth.[8] The collation due by Miss Bonnie W. Rolling shall be one-fifth[9] to Dr. Laurance R. Rolling, one-fifth to (Julian) Emanuel Rolling, one-fifth to the heirs of Earl W. Rolling, that is, Earl A. Rolling, Raymond L. Rolling and Mrs. Ruth Rolling Massa; and one-fifth to the heirs of Alfred B. Rolling, that is to Bon-nabel Rolling, Charles Rolling and Leora Rolling. Accordingly,
“It is ordered, adjudged and decreed that there be judgment herein in favor of Earl A. Rolling, Raymond L. Rolling, Mrs. Ruth Rolling Massa, Bonnabel Rolling, Charles Rolling and Leora Rolling and against Miss Bonnie W. Rolling in the full sum of Two Hundred Thirty Seven and 3%oo ($237.33) Dollars to each.
“It is further ordered, adjudged and decreed that there be judgment herein in favor of Dr. Laurance R. Rolling and against Miss Bonnie W. Rolling in the full sum of Three Hundred Sixty-Two and no/100 ($362.00) Dollars.[10]
*297 “It is farther ordered, adjudged and decreed that there be judgment herein in favor of Miss Bonnie W. Rolling and against (Julian) Emanuel Rolling in the full sum of Twenty-Four and no/100 ($24.00) Dollars.[11]
“All other demands are dismissed.
“All costs are to be borne in equal proportions by Miss Bonnie W. Rolling, Dr. Laurance R. Rolling and (Julian) Emanuel Rolling.”
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Earl W. Rolling died prior to trial and he was represented by his heirs: Earl A. Rolling, Raymond E. Rolling and Mrs. Ruth Rolling Massa.

. Alfred B. Rolling also died prior to trial and be was represented by Ms heirs: Bonnabel Rolling, Charles Rolling and Leora Rolling.

. “In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.” Art. 2480, LSA-Civil Code of 1870.

. “The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale.” Art. 2444, LSA-Civil Code of 1870.

. “The advantage which a father bestows upon his son, though in any other manner than by donation or legacy, is likewise subject to collation. Thus, when a father has sold a thing to his son at a very low price, or has paid for him the price of some purchase, for (or) has spent money to improve his son’s estate, all that is subject to collation.” Art. 1248, LSA-Civil Code of 1870.

. Miss Bonnie W. Rolling failed to appeal or to answer the appeal; therefore, we are unfortunately unable to consider this aspect of the case. See 26 Tulane Law Review 203, 216 (1952) and Taylor v. *296 Brown, 1953, 223 La. 641, 642, at page 654, 66 So.2d 578, at page 582, in this connection.

. She should have requested that Julian Emanuel Bolling be required to collate $4,000 rather than $3,680.

, One-fifth of $1,750 or $350 is due to her from Dr. Rolling, and one-fifth of $3,080 or $736 is due to her from Julian Emanuel Rolling.

. One-fifth of $3,600 or $712 is due to Dr. Laurance R. Rolling and Julian Emanuel Rolling and $712 is to be divided among the heirs of Earl W. Rolling and also $712 is to be divided among the heirs of Alfred B. Rolling. In other words, each of the aforementioned heirs is to receive the sum of $237.33.

. This is the net difference of amounts shown in footnotes 8 and 9.

. Also see footnotes 8 and 9.