FRUGÉ, Judge
(dissenting).
The trial court had little difficulty in analyzing plaintiffs’ claim in its true light. In a short but thorough opinion, which cited all pertinent statutory provisions and decisions, the Court held that plaintiffs, by alleging on the verbal contract of joint adventure, have not set forth a cause of action. It reviewed the history of the legal status of a mineral lease and properly concluded that while the essence of the contract and of the rights conferred upon the mineral lessee have not been changed, the 1950 statute did accord to the mineral lessee the benefits of the laws relating to immovable property. It then concluded that the codal and statutory provisions effectively prevent plaintiffs from establishing title to the Sweeney Lease through an alleged verbal agreement of joint adventure. The Court recognized the distinction between any attempt to create or establish a title in this manner and a suit in which a plaintiff seeks redress because he was divested of property through fraud. In my opinion the trial court was correct and its decision should not be reversed.
I am of the opinion that the owner of an oil, gas and mineral lease is now accorded the benefits of all laws -relating to the owners of real property, the most important of which is the protection from claims under verbal agreements relating to such leases, therefore, I am in complete accord with the majority when it holds: “Although the jurisprudence of this State has fluctuated in construing a mineral lease as being in essence a real right or a personal right, it has been consistent to the effect that the transfer of an interest in a mineral lease cannot be made subject of a verbal agreement and cannot be proved by parol evidence.”
The majority opinion alludes to Emerson v. Shirley, 188 La. 196, 175 So. 909 (1937). That case did approve the admission of parol evidence to establish a verbal contract of joint adventure, but upon a complete analysis of it, it will be found that, by contrast, the Emerson case actually supports the argument made by the defendant in the instant case.
In the Emerson case, supra, the joint adventurers actually had purchased title ter a royalty interest by one deed running in favor of both of them. Each h»eld title by this deed to a Yi interest in the royalty so purchased. One of the joint adventurers then purchased the Yz interest of the other through an interposed party; and the charge was made that the seller was induced to part with his interest by fraud and misrepresentation, particularly through the failure of the purchaser to disclose to the seller facts known to the purchaser concerning the productive possibilities of a well then drilling on the land affected by the royalty interest. In connection with this charge of fraud, the Court did admit parol proof to show the existence of a joint ven *187 ture or partner relationship that had existed for several years and, in effect, said that this parol evidence was pertinent and admissible to prove the partnership or joint venture but not for the purpose of establishing title. The Supreme Court clearly recognized the distinction between that situation and one in which an attempt might be made to establish title by parol evidence in the following language of the decision:
“* * * We must bear in mind that the original joint ownership of the royalty interest, of which one-half is in contest in this suit, is said to be evidenced by a written deed. Hence, if parol evidence is offered to prove the ■confidential relation alleged in this •case, it will not be to establish the original joint ownership between the plaintiff and the defendant. If such evidence should tend to show that there ■was a verbal agreement to buy and sell real estate jointly, or as if in partnership, it will be merely an incident and not the purpose of the evidence. The ■rule which forbids the proving of title to real estate by parol evidence is not •applicable to evidence which is offered for some other purpose, for which it is relevant and competent, and which relates only collaterally and unavoidably to, and without establishing or affecting, the ownership of real estate. Wigmore on Evidence (2d Ed.) Vol. 2, p. 863, § 1252; 22 C.J. p. 978, § 1224; p. 987, §§ 1230, 1231; p. 994, § 1249.” (Emphasis .added.)
The complete inapplicability of the Emerson case to the instant case can be demonstrated by a brief analysis of the subsequent case of Wier v. Glassell, 216 La. 828, 44 So.2d 882 (1950). In that case, the plaintiff had sold the defendant certain mineral leases, reserving an overriding royalty interest. Prior to the expiration of these lease contracts, the defendant purchased new leases, thereby extinguishing plaintiff’s overriding royalty interests in the prior contracts. Plaintiff attempted to have the Court recognize the existence of the overriding royalty interests against the new leases, and one of his main contentions was that the defendant’s act violated a constructive trust between the parties. The Court squarely repudiated this contention, and in so doing stated:
“Counsel for plaintiff stresses the element of fraud and bad faith growing out of defendant’s alleged breach of trust. Assuming however, that the allegations of the petition with regard to these matters are allegations of fact and not merely conclusions of the pleader, they would avail plaintiff nothing for here again, a rule of evidence would apply against him. In Scurto v. Le Blanc, 191 La. 136, 151, 184 So. 567, 572 it was held that,
* * * although parol evidence is admissible for a plaintiff to prove that he was divested, by fraudulent means, of a title to real estate which he once owned, parol evidence is not admissible — even when fraud is alleged— to establish a title to real estate in one who did not previously oztm the property,. * * (Emphasis added)
The rule is very well stated in Ceromi v. Harris, 187 La. 701, 175 So. 462, as follows:
“Parol evidence to prove defendant’s ownership of the property in dispute was properly rejected by the trial judge. It is axiomatic under the law and jurisprudence of this state that pa-rol evidence is inadmissible to create a title in one who never owned the property or to show that the vendee was in reality some other person than the person named in the act of sale. Civ. Code, arts. 2275, 2276, 2292, 2440; Planby v. Texas Company, 140 La. 189, 195, 72 So. 933; Hodge v. Hodge, 151 La. 612, 92 So. 134; Eberle v. Eberle, 161 La. 313, 108 So. 549; Succession of Prescott, 170 La. 233, 127 So. 611; Lindner v. Cotonio, 175 La. 352, 143 So. 286.”
Thus it will be clearly seen that the parol evidence rule, as applied by the Supreme *188 Court, is that where fraud is involved, parol evidence can be admitted to revest a title divested under fraudulent circumstances. But parol evidence can never be used to create a title; that is what the plaintiffs are seeking to do in the instant case, and therefore the Emerson case is not relevant.
While plaintiffs’ counsel lays great stress on the fact that fraud has been alleged, the “allegation” of fraud in no way entitles plaintiff to create a title by parol evidence. The Supreme Court in Ceromi v. Harris, supra, after stressing the existence and importance of the parol evidence rule involving real estate, had this to say of the attempt by the plaintiff to avoid the parol evidence rule because of a fraud charge:
“Plaintiff offered to prove by parol evidence the verbal acknowledgments of defendant that the facts were as alleged in the petition. This court held that the evidence was properly excluded, and that the allegation of fraudulently denying the original bargain did not take the case out of the rule, for a verbal agreement of this sort, touching immovable property, was only capable of being enforced at law when the party to be charged confessed it on oath, and when delivery had been made. Every refusal to carry out an oral agreement for the conveyance of land might in one sense be charged to be fraudulent, and thus the rule would be made nugatory.”
Since plaintiffs’ petition clearly shows that plaintiffs were complete strangers to the 1953 mineral lease except through the alleged verbal contract of joint adventure, their only hope of prevailing here is to create their title by parol evidence; and in so doing, they are met squarely by the rule announced in the decisions discussed above.
In oral argument counsel for plaintiffs asserted that plaintiffs are not suing for an interest in the Sweeney lease but are in fact asking only for a personal judgment for monetary damages resulting to plaintiffs as a result of defendant’s claimed breach of his agreement. This is opposed to the allegations and prayer of the petition, which only demanded specific performance of the verbal contract of joint adventure. However, even if the damage claim is considered, it should avail plaintiffs nothing.
In Patterson v. Bloss, 4 La. 374, plaintiff sued for specific performance of a contract for the sale of land and damages for its nonexecution. During the course of the trial, plaintiff restricted his claim to the demand for damages, and the lower court awarded judgment in his favor. On appeal, the Supreme Court stated:
“ * * * The contract was for the alienation of land, and the plaintiff did not offer any written evidence of it, although it was denied by the answer. His counsel has contended that, as damages only are claimed, and not the performance of the contract, parol evidence is sufficient. Such a distinction cannot be admitted. The law requires that every contract for the alienation of land be reduced to writing, and forbids the admission of parol evidence of it. There is, however, an exception to it; but the present case is not within it. Lou.Code, 2255.
“He who claims damages for the in-execution of a contract, must prove that it was actually entered into in the same manner as if it required the specific performance of it.” (Emphasis added.)
Here is a good example, as well as a decisive judicial precedent, why plaintiffs cannot accomplish by indirection (i. e., the profits claim) that which the law squarely prohibited them from establishing directly.
Further, plaintiffs complain that it would have been impossible to have evidenced in writing any agreement by the Sweeney Lease because, when the agreement was made, it was not known what leases, if any, would be bought by the joint adventure. That complaint is easily answered. It would only have been necessary to have had a writing signed by all parties embodying *189 what portion of Paragraph S of the petition in this case stating:
“ * * * (I)t was specifically agreed between petitions, MILTON KNOX and JACK A. HAYES and defendant, FRITZ J. MULLER that they would each contribute Twenty Thousand ($20,000.00) Dollars to make a total of Sixty Thousand ($60,000.00) Dollars which would be used for the purchase of royalties and leases in the North Rayne and/or Castille Area and specifically, in the area northeast of the W. Pettijean No. 1 Well * *
Had such a writing actually been signed by the parties, it would then have been a question of whether the Sweeney Lease fell within the area contemplated by this writing. Also, of course, plaintiffs could have attached interrogatories to their petition under Article 424.22 of the Code of Practice (now Article 1491 of the LSA-Code of Civil Procedure). The defendant would have been compelled to answer under oath before the hearing on the exception. Plaintiffs signally failed to do so.
Plaintiffs have alleged the existence of a verbal contract of joint adventure relating to the Sweeney Lease, therefore they must necessarily be bound by the laws relating to such a transaction.
In Louisiana, a “joint adventure” is a “partnership” and the designations are used interchangeably. In Young v. Reed, La.App., 192 So. 780, the Court stated: “The relation of joint adventurers is governed by the principles which constitute and control the law of partnership.”
In Louisiana there can be no partnership in lands in the absence of a written agreement. LSA-Civil Code Article 2836 provides as follows:
“If any part of the stock of this partnership consist of real estate, it must be in writing, and made according to the rules prescribed for the conveyance of real estate, and recorded as is hereafter prescribed with respect to partnership in commendam.”
The courts have repeatedly held that the article means exactly what it says. See Stack v. De Soto Properties, Inc., 221 La. 384, 59 So.2d 428, Strieker v. Morgan, D.C., 158 F.Supp. 830 (1958).
Here the “stock” of the alleged joint adventure consisted of the Sweeney Lease, a property right accorded all of the benefits of the laws relating to real estate. Under the codal article and the decisions just referred to, a contract of joint adventure must be in writing and must adhere to the rules prescribed for the conveyance of real estate. Plaintiffs’ petition clearly fails to allege the facts necessary to meet these requirements.
The definition of a broker is set out in LSA-Civil Code Article 3016, as follows:
“The broker or intermediary is he who is employed to negotiate a matter between two parties, and who, for that reason, is considered as the mandatary of both.”
Plis Obligations are set out in LSA-Civil Code Article 3017, as follows:
“The obligations of a broker are similar to those of an ordinary manda-tary, with this difference, that his engagement is double, and requires that he should observe the same fidelity towards all parties, and not favor one more than another.”
The brokerage relationship is explained in Martin v. Fontenot, La.App., 27 So.2d 457, as follows:
“It is well settled that where a real estate broker acts in the capacity of an agent in bringing the owner of property and a prospective purchaser together in a completed contract of sale, the broker then becomes the agent of both parties. C.C. Art. 3016. Having thus become the agent of both parties, the obligations of the broker become dual in their nature, and require that he should observe the same fidelity to *190 ward all parties when he represents, and not favor one more than another. C.C. Art. 3017.”
There is no suggestion in the petition that defendant was acting as a broker for the plaintiffs in the purchase of the Sweeney Lease. On the contrary, the petition alleges that plaintiffs and defendant were co-adventurers under a verbal agreement and that the acquisition of the Sweeney mineral lease by defendant is claimed to have vested title to a two-thirds interest to said lease in plaintiffs as co-adventurers.
Notwithstanding the fact that there is no brokerage relationship alleged here, plaintiffs rely heavily on the cases of Bailey v. Texas Pacific Coal & Oil Co., La.App., 134 So.2d 339; Jones v. Jones, La.App., 126 So.2d 437; Pickens v. Harris, 160 La. 628, 107 So. 470; and La Nasa v. Wiener, La.App., 127 So.2d 74. These cases are not applicable to the instant case.
In Bailey v. Texas Pacific Coal & Oil Co., supra, only a question of procedure was involved. Defendant admitted that plaintiffs petition stated a cause of action for a cash brokerage fee. Defendant sought to have dismissed plaintiff’s claim for an overriding royalty interest on several leases as being insusceptible of proof by parol evidence. The Court held that as to the claim for cash brokerage fees, the petition did state a cause of action, and the Court remanded the case under the rule that a suit will not be dismissed on exception of no right or no cause of action where the petition adequately sets forth a sight and cause of action as to any part of plaintiff’s demands. The Court specifically refused to express an opinion on whether parol evidence may or may not be admitted to establish an alleged agreement to transfer an overriding royalty interest out of a mineral lease. It is this latter issue which is before the Court in the instant case.
In Jones v. Jones, supra, plaintiffs had employed defendant as a broker to buy mineral leases for them on an agreed commission of $25.00 per acre. The leases were taken in defendant’s name and assigned by defendant to the plaintiffs. Defendant misrepresented the purchase price which he had paid the landowners and pocketed the difference between what he represented the price to be and what he actually paid the landowners for the leases. No claim of title to the mineral leases was involved. Plaintiffs sued defendant for the money fraudulently retained by defendant in excess of the agreed brokerage fee. In rejecting defendant’s contention that plaintiffs’ claim could not be proved by parol evidence, the Court stated:
“The title to real estate is not affected by the issues presented in the instant case. Herein we are concerned only as to whether an improper commission or profit was charged for the services rendered by defendant acting as agent for plaintiffs in the purchase of certain mineral acres.”
In Pickens v. Harris, supra, the defendant broker had been orally commissioned by the plaintiff to find a purchaser for a mineral lease on plaintiff’s land. The entire consideration received for the lease was to be paid to plaintiff after deducting defendant’s commission and expenses. To facilitate the negotiations, plaintiff executed a mineral lease in defendant’s favor. Defendant assigned the lease of J. L. Pratt and collected $6,800.00. Misrepresenting the consideration for the lease to be $3,-400.00, the defendant paid plaintiff $3,400.00 less expenses and less the agreed commission of $3,400.00. Defendant fraudulently withheld from plaintiff the balance of the $6,800 consideration for which the mineral lease had actually been sold. Defendant excepted on the ground that “plaintiff’s petition failed to allege upon a counter letter or assert title in himself.” There was no question of creating by parol title to the mineral lease involved in the Pickens case. The Court carefully explained that fact in the following language:
“The plaintiff is not attacking either the original lease or the assignment to *191 Pratt. The binding effect of both the lease and assignment is recognized in the petition, insofar as they operate a transfer of the mineral rights and privileges.
“The charge against Harris is that he was to make a sale of the lease for the plaintiff on a commission and with the right to deduct the expenses.
“That Harris represented to plaintiff that he had only gotten $3,400 for the lease and settled with plaintiff on that basis, whereas in truth and fact Harris sold the lease for $6,800, and which latter price he fraudulently concealed from the plaintiff.”
In the Pickens case, supra, the plaintiff alleged that the true consideration for the lease was $6,800 less commission and expenses. He asked only that he be made whole for that part of the consideration of which he had been defrauded by the defendant. The right to show the true consideration of a contract by parol evidence is well settled in the State, even though the true consideration may be different from that recited in the act. Cleveland v. Westmoreland, 191 La. 863, 186 So. 593, citing Jackson v. Miller, 32 La.Ann. 432; Levert et al. v. Hebert, 51 La.Ann. 222, 25 So. 118; Guaranty Bank & Trust Co. v. Blunter, 173 La. 497, 137 So. 904. To the same effect is the recent case of Louis v. Garrison, La.App., 64 So. 2d 254, at page 256, where the Orleans Court of Appeal stated:
“The rule of evidence that parol evidence is admissible to show the true consideration not only exists in this State but exists throughout this country. In our jurisprudence it is well settled that the real cause and consideration of a written contract pertaining to immovable property may be shown by any sort of evidence even though the act does not recite a consideration, or expresses a different one. See Dart’s New La. Dig. Vol. 7, page 215, § 241.”
The factual and legal distinctions between the Pickens case, supra, and the instant case are clear. In the Pickens case (1) plaintiff was the owner of the land, (2) plaintiff was a party to the original lease as lessor, and (3) plaintiff was only seeking recovery from his broker of the true consideration for the lease, which was fraudulently withheld from him. In the present case (1) plaintiffs are complete strangers to any written title, (2) they are seeking, not any fees or commissions, but rather the proceeds of the sale of the lease to which they could be entitled only by proof of ownership, and (3) the only proof of title alleged by plaintiffs is the verbal contract of joint adventure.
La Nasa v. Wiener, supra, was a suit in tort “to recover the sum of $1,179.95, representing damages which plaintiff asserted he incurred as a result of the defendant Wiener’s fraudulent procuration of a cancellation of an agreement whereby plaintiff would purchase improved real estate for the sum of $5,000.” In the La Nasa case, title to the real estate involved was never in either plaintiff or defendant. Therefore, the question involved in the pending suit could not possibly have been touched upon in the La Nasa decision. Judge Regan did observe in the La Nasa decision that it was conceded by both litigants that powers of attorney granted to buy or sell immovable property must be evidenced in writing and that parol evidence is inadmissible to establish an oral agency agreement if that evidence would affect title to real estate. This statement, conceded to be the law by the parties in the La Nasa case and the Court, is fatal to plaintiffs’ cause here.
As heretofore discussed, the plaintiffs seek to prove by parol evidence an agreement with the defendant which would not only affect title to the Sweeney mineral lease, but the parol evidence would of necessity have to be offered to create a title in the plaintiffs as the basis of their claim for a share in the profits from the sale of that mineral lease.
*192 Further, as heretofore mentioned, it is obvious that plaintiffs are seeking- to avoid the fatal weakness of their case by making as their principal argument the point that they are seeking here only money and not title to the Sweeney mineral lease. Counsel for appellants argue that parol evidence may be used to establish the joint adventure to share in the profits from the purchase and sale of this lease. Unless this Court is willing to abandon established principles of Louisiana Law and advert to common law authorities never previously recognized here, plaintiffs still face the same complete bar to their claim that would have existed had they sued the defendant for an interest in the lease while he still held title.
The crux of appellants’ argument that they are not seeking to prove ownership of the Sweeney Lease is found on Page S of their brief, wherein their position is stated ■as follows:
“This, we submit, is the crux of the case at bar. Appellants are not attempting to prove their ownership of a lease now in the hands of a third party. Any evidence introduced in this suit or any judgment rendered herein could not effect the title. Plaintiffs are attempting to prove a personal agreement which they had with defendant.”
As the first step in analyzing this contention of appellants, we are reminded of the specific prayer of plaintiffs’ petition in which demand is made that judgment be rendered “ordering defendant to specifically perform on their contract of joint adventure * * It can properly be asked what contract of joint adventure? It can only be the verbal agreement of joint adventure relating to the Sweeney mineral lease which is subject to the provisions of Articles 2275 and 2440 of the LSA-Civil 'Code. Since plaintiffs have no claim to or interest in the Sweeney Lease except through this verbal contract, they must necessarily establish the existence of that agreement as a basis for their prayer for a money judgment, and they are completely barred from doing this.
Several common law authorities were cited by the majority and by counsel for plaintiffs. It is recognized that a majority common law rule does exist which would allow a partnership or a joint adventure to be created by parol. However, if common law authority must be referred to, let us turn to 68 C.J.S. 407, Partnership § 4 (cited in appellants’ brief) in which it was noted that a minority view exists that such a partnership or joint venture cannot be created by parol, and there was cited 27 C.J. 221, Note 16. In that note, Louisiana is recognized as being one of the minority states, and the cases of Gantt v. Gantt, 6 La.Ann. 677, and Dunbar v. Bullard, 2 La. Ann. 810, are cited. It can be conceded, therefore, that a majority rule to the contrary does exist in common law; however, this serves the plaintiffs nothing since Louisiana holds to the minority rule.
In considering this common law approach contended for by appellants, it can only be said that the extreme importance of maintaining the stability of titles that is provided for in Articles 2275 and 2440 of the LSA-Civil Code and in the landmark case of McDuffie v. Walker, 125 La. 152, 51 So. 100, cannot be overemphasized. Many of the common law states whose authorities are relied on by plaintiffs do not afford any of these basic rules and claimants are permitted, even as against third parties, to assert secret equities relating to real estate titles. In my opinion, it would not be wise to open the door to this line of jurisprudence in Louisiana.
I will not dwell on the common law authorities any longer, as there is specific authority in Louisiana forbidding plaintiffs to do by indirection what they cannot accomplish directly by the use of parol evidence. Remembering that the gravemen of plaintiffs’ contention on this point is that they are seeking only the profits of the transaction of joint adventure and are not *193 affecting directly the title, then we should refer to the decision of the Louisiana Supreme Court in Hanby v. Texas Company, 140 La. 189, 72 So. 933, which was cited with approval in Serio v. Chadwick, La. App., 66 So.2d 9.
The Hanby case, supra, did not directly involve the establishment of title or the ownership of the mineral royalty interests in dispute there. The Texas Company, as the operating lessee, was paying production money royalties to the record owner of the mineral interest, but these proceeds then became involved in a dispute resulting from a claim that title to the mineral interest was purchased by an agent in his own name and actually belonged to the principal. The Texas Company then suspended payment of the royalties, and the record owner sued to enforce the continuance of these payments. The suit, therefore, was somewhat akin to a concursus action involving only money royalties. The alleged principal attempted to prove that the royalties and proceeds should be paid to him, but had only parol evidence available to establish the principal-agency relationship. In spite of the fact that a fraudulent breach of the fiduciary relationship was alleged, and even though only the proceeds of and not title to the mineral interests were at issue, the Supreme Court in the Hanby case had no difficulty in rejecting the plaintiff’s attempt to establish title by parol. This is exactly the position that is being asserted by plaintiffs here.
In Gantt v. Gantt, 6 La.Ann. 677 (cited in Corpus Juris), the plaintiff sued for an accounting and settlement of an alleged partnership with defendant seeking judgment for half of the value of land allegedly owned by the partnership and the improvements and fixtures placed thereon. Plaintiff offered parol evidence to prove the contract of partnership, and the Court sustained an objection thereto on the ground that a partnership in real property could not be proved by verbal testimony. Plaintiff sought then to prove by parol evidence the existence of a partnership in the improvements and crops grown on the land. The Court rejected use of parol evidence to prove such a partnership, stating that one may not prove a contract of partnership in crops and improvements when such alleged partnership necessarily arose by virtue of and through a partnership in lands and slaves, which is insusceptible of proof by parol. Here again an attempt to establish title to immovable property necessary to sustain a claim to fruits or benefits of a partnership in real property was squarely rejected by the Supreme Court under the parol evidence rule.
Plaintiff’s attempt to restrict their claim to the benefits realized by the alleged joint adventure overlooks completely the fact that such a claim is incidental to the basic issue, that being the title that must be proved by plaintiffs to recover under either the money demand asserted by them or the alternative demand for an accounting. It is so fundamental that citation of authority is not required that anyone seeking a settlement or accounting of any kind must prove his interest in the property which is the subject of the accounting or settlement. A clear example of this can be found in partitions, which obviously involved a settlement between the parties involved. The rule is very clear that a plaintiff in a partition suit must allege and prove his title before he has any standing in Court. See Black on Judgments (2nd Ed.) Vol. 2, p. 1102, Sections 660, 661; Choppin et al. v. Union National Bank, 47 La.Ann. 660, 17 So. 201; Samuels v. Parsons et al., 146 La. 262, 83 So. 548; Norah v. Crawford, 218 La. 433, 49 So.2d 751; Kelly v. Moore, 225 La. 1072, 74 So.2d 379; Taylor v. Williams, La.App., 107 So.2d 319.
Stripped of all its frills, plaintiffs’ contention that they are simply attempting to enforce a personal agreement for money is simply this: They would have this Court hold that so long as one retains title to a mineral lease he is protected by the parol evidence rule, but when he sells it, he loses that protection and is then subject to an accounting suit where the same parol evi *194 dence would be admitted because then only a claim for money would be involved. This would not only be bad law, but the absurdities of such a holding from a practical standpoint are obvious; particularly would this be true with respect to mineral leases having highly fluctuating values. If that were the law, claimants under the “verbal agreement” (particularly if they outnumber the record owner of the lease) would thereby be permitted to sit idly by while the true owner assumes all financial risks of maintaining the lease and then descend on him with a “preponderance” of verbal testimony when he is fortunate enough to realize a profit from the sale of that contract. This is the very type of situation that the framers of the Louisiana Civil Code wisely decided to forbid in the interest of public policy.
For the reasons hereinabove stated, I respectfully dissent.
En Banc.
Certification of Questions of Law.
PER CURIAM.
In our original majority opinion, reversing the trial court, we overruled an exception of no cause of action and remanded this case for trial on the merits. A rehearing was granted because, in view of the importance of the questions of law involved to the oil industry and to the public generally, we were earnestly requested to certify the legal questions to the Supreme Court for decision in accordance with our constitutional authority to do so.
In support of the request for certification, it is pointed out that the Supreme Court has never directly ruled upon the issues involved and that, if we do not certify the case, under the ordinary practice of the Supreme Court it will not review our original majority decision herein until after (a) the trial below on the merits, (b) judgment adverse to the defendant therein, and (c) an affirmance of our present decision on further appeal' — -proceedings which will cause a long delay before the Supreme Court is presented with the opportunity to rule upon our decision’ of the questions of law by our original majority opinion herein (if indeed the issues finally are again presented for appellate determination by that tribunal.) Until such indefinite time in the future as the Supreme Court finally decides the questions, it is pointed out, there will be uncertainty as to the validity of, or formalities necessary in connection with, the common practice of parties entering into agreements to share any profits from oil property transactions made in the name of one party but intended to be for the account of both or all parties.
Under Article VII, Section 25, Louisiana Constitution of 1921, LSA.:
“Each Court of Appeal shall have power to certify to the Supreme Court any question of law arising in any cause pending before it concerning which, for its proper decision, it desires the instruction of that court * *
While a majority of this court is still of the opinion that our original decision of the issues herein is correct, the entire court has also decided that, for the reasons above stated, this is a proper case in which to exercise our discretionary constitutional authority to certify the questions of law to the Supreme Court in order to obtain the instructions of that tribunal for our proper decision of this case.
Therefore, as authorized by Section 25 of Article VII of the Louisiana Constitution of 1921 and LSA-R.S. 13:4449, and in compliance with Rule XII, Section 4, of the Supreme Court, this court does herewith apply to the Honorable, the Supreme Court of Louisiana, for instructions on questions of law arising in the above captioned appeal.
The facts are fully set forth in our original opinion.
*195 Under the allegations of the petition of plaintiffs Hayes and Knox, they and the defendant Muller entered into an oral agreement of joint adventure, pursuant to which each co-adventurer advanced twenty thousand dollars to he used for the purchase of royalties and leases in a certain area in Acadia Parish. Pursuant to this agreement, the defendant Muller obtained the Sweeney mineral lease affecting certain property in Acadia Parish, which lease was obtained by Muller in his own name only.
Six years later Muller sold this Sweeney lease for nine hundred thousand dollars to the Louisiana Gas Corporation.
By this suit, the plaintiffs pray for judgment and their share of the profits realized from the sale of the Sweeney lease, or in the alternative that the defendant be ordered to make an accounting to them of all profits derived from the joint advanture, including those derived from the sale of the Sweeney lease.
The questions upon which we desire instructions are these:
I.
Under the facts stated in our opinion, can parol evidence be used to prove the joint adventure in question, which was intended to acquire and to dispose of immovable properties and to share in the profits resulting from these dealings ?
II.
Under the facts stated, does the demand of the plaintiffs Hayes and Knox for recovery of the profits of the joint advan-ture made through dealing in immovable property, or for an accounting in connection therewith, concern the title to immovable property, so as to be within the statutory prohibition preventing the use of parol evidence to prove whether the acquisitions by Muller were intended to be for the benefit of his co-adventurers as well as himself?
III.
When formal title to immovable property is acquired by Co-adventurer Mullei only, does the fact that title to the immovable property has been conveyed by Co-adventurer Muller to a third person (and thus cannot be affected by the outcome of a suit by Co-adventurers Hayes and Knox against Co-adventurer Muller), permit Co-adventurers Hayes and Knox to prove, without a writing, that title to the immovable property was in fact acquired for the benefit of all co-adventurers, thus entitling' Co-adventurers Hayes and Knox to a share in the proceeds from the sale of the real property acquired and sold by Co-adventurer Muller only?
IV.
Where Co-adventurers Muller, Hayes, and Knox enter into an oral agreement of joint adventure for each to contribute an equal sum to purchase oil leases and royalties, and pursuant thereto an oil and gas lease is obtained in Co-adventurer Muller’s name only and Muller subsequently sells this lease to a third person at a profit, are Hayes and Knox permitted to use parol evidence to prove their original agreement so as to establish their right to recover their share of profits in a suit for money judgment against Muller, wherein no claim is made against the title held by the third person ?
Respectfully submitted:
S/Albert Tate, Jr.
ALBERT TATE, JR.
S/J. Cleveland Frugé
J. CLEVELAND FRUGÉ
S/Preston L. Savoy
PRESTON L. SAVOY
S/John T. Hood, Jr.
JOHN T. HOOD, JR.
S/William A. Culpepper
WILLIAM A. CULPEPPER
Judges
November S, 1962
LAKE CHARLES, LOUISIANA